PRATT, Respondent, *v.* KISTLER, Appellant.

(No. 5,597.)

(Submitted January 13, 1925.  Decided February 13, 1925.)

[233 Pac. 600.]

*Personal Injuries — Automobiles — Duty of Drivers — Directed Verdicts—Proper Denial.*

Personal Injuries — Automobile Accident — Directed Verdict — Proper Denial.

    1. In an action by a bicyclist against the driver of an automobile for damages sustained in a collision at a street intersection in the night-time, in which the defense was contributory negligence, *held* that the court properly denied defendant's motion for a directed verdict, the evidence upon the question of defendant's negligence and plaintiff's contributory negligence being in sharp conflict, which presented a case for the jury's determination.

[72 Mont. 356.]

Same—Duty of Drivers of Automobiles and Bicyclists.

    2.  Automobiles and bicycles have equal rights in the use of streets, the driver of each owing a duty to the other to exercise reasonable care and keep a lookout in such an intelligent and careful manner as to enable him to see the things which a person in the exercise of ordinary care and caution for his own safety and the safety of others would have seen under like circumstances.

Trial—Directed Verdict—Elements Entering into Consideration of Motion—When Motion not to be Granted.

    3.  No case should ever be withdrawn from the jury when reasonable men might draw different conclusions from the evidence, and in considering a motion by defendant for a directed verdict the court may indulge every inference which may fairly be drawn from the testimony in favor of the plaintiff, and the latter is entitled to the benefit of any evidence given during the course of defendant's case.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

ACTION by Kenneth Pratt, a minor, by his guardian *ad litem,* Mrs. Kate C. Pratt, against Dr. H. D. Kistler. Judgment for plaintiff and defendant appeals. Affirmed.

*Messrs. Frank & Gaines,* for Appellant, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

Citing: *Scheytt* v. *Gallatin Valley Milling Co.,* 54 Mont. 565, 172 Pac. 321; *Walters* v. *Chicago etc. R. Co.,* 47 Mont. 501, 46 L. R. A. (n. s.) 702, 133 Pac. 357; *Green* v. *Bohm,* 65 Mont. 399, 211 Pac. 320; *Sherris* v. *Northern Pac. R. Co.,* 55 Mont. 189, 175 Pac. 269; *Keith* v. *Great Northern Ry. Co.,* 60 Mont. 505, 199 Pac. 718; *Williams* v. *Hample,* 62 Mont. 594, 205 Pac. 829.

---

    2.  Reciprocal duties of bicyclist and automobile driver approaching one another at street intersection to use reasonable care, see note in **L. R. A.** 1916A, 746.

    Liability for collision of automobile with bicyclist, see note in 28 **L. R. A.** (n. s.) 944.

    Status of bicycles on highway, see note in 16 **Am. St. Rep.** 314; 48 **Am. St. Rep.** 377.

    Rights and duties of automobile drivers to bicycle riders, see notes in 21 **Ann. Cas.** 656; **Ann. Cas.** 1916E, 675.

*Messrs. Maury & Maury* and *Mr. James E. Murray,* for
Respondent, submitted a brief; *Mr. H. Lowndes Maury*
argued the cause orally.

Citing: *McDonald* v. *Yoder,* 80 Kan. 25, 101 Pac. 468;
*Rogers* v. *Phillips,* 206 Mass. 308, 28 L. R. A. (n. s.) 944,
92 N. E. 327; *Cain* v. *Southern Massachusetts Tel. Co.,* 219
Mass. 504, 107 N. E. 380; *O'Brien* v. *Corra Rock Island Min.
Co.,* 40 Mont. 212, 105 Pac. 724; Babbit on Motor Vehicles,
secs. 153, 244.

MR. JUSTICE STARK delivered the opinion of the court.

Plaintiff recovered judgment against the defendant for
injuries sustained by him when a bicycle upon which he was
riding was run into by an automobile driven by defendant.
The defendant has appealed, and his only complaint is that
the court erred in denying his motion for a directed verdict,
made at the close of all the evidence.

The complaint charged the defendant with negligence in
several respects, among them that he did not give warning of his
approach, and that he failed to keep a lookout ahead. The
defendant admitted the collision, but denied liability on the
ground that plaintiff was guilty of contributory negligence.

It appears from the testimony that Park Street in the city
[1] of Butte, extends east and west, and at the point involved
in this suit is fifty-nine feet wide between the north and
south curbs. A street-car track extends along the center of
the street. The distance from the north rail of the car
track to the curb on the north side of the street is 27.35
feet. Alabama Street runs north and south and crosses Park
Street at right angles. This street is forty feet wide between
the sidewalk curbs.

The defendant's account of the incident is that he was
driving west on Park Street in an open type Pierce-Arrow
car, without curtains, along a course midway between the
street-car track and the curb on the north side of the street

[72 Mont. 356.]

at about 10 o'clock P. M., with his headlights on. The car had a right-hand drive. Lloyd Gage was at defendant's left on the front seat; in the rear seat defendant's wife sat at the left; next to her was Mrs. Gage; and on the right side was the defendant's son Donald Kistler, with Richard Evans on his lap. When he reached a point ninety feet east of the intersection of Alabama Street he looked into that street and continued to do so until he reached its east line, but did not see the plaintiff approaching; and, continuing in the same course, just as he was about to cross the west line of Alabama Street, the plaintiff, riding his bicycle, headed directly south, dashed in front of the car and received the injuries complained of. As soon as defendant saw the plaintiff he applied the brakes to his car and stopped as quickly as possible. All of the witnesses who were asked about it at the trial testified that as the defendant's car approached the scene of the accident it was traveling at from twelve to fifteen miles per hour, and likewise that, at least until it reached the east line of Alabama Street, it was midway between the car tracks and the curb.

There is some testimony in the record tending to corroborate defendant's account. Lloyd Gage said that the collision occurred immediately after plaintiff appeared in front of the car. A duly qualified witness said that under the circumstances shown to exist at the time, a car like defendant's, going at fifteen miles per hour, would be brought to a stop in a distance of seventy to seventy-three feet from the time the driver started to apply the brakes.

Clem Vogel, who saw the bicycle and the car just at the time of the collision, from a point not more than sixty feet away, and immediately walked over to the car, said that when he reached it "it was just a little bit past the entrance to the Mueller home and it was midway between the sidewalk and the street-car track." The entrance to the Mueller home is between fifty and sixty feet west of where defendant placed the point of collision.

Plaintiff's account is that he rode his bicycle down the west side of Alabama Street, traveling about five miles per hour, and, at a point about three feet from the north line of Park Street, looked east on that street to see if any car was approaching and saw none. He then made the turn west on Park Street, riding along about three feet from the curb, and had proceeded about five. to ten feet when the defendant's car ran into him from behind and inflicted the injuries. Other witnesses testified that before the accident plaintiff had made the turn on to Park Street and was riding west as close as possible to the curb, "hugging the curb," one of the witnesses said. The witness Barker, who observed the collision from a point some 200 or 300 feet east on Park Street, testified that just before the car came in contact with the bicycle, it (the car) swerved to the left and then stopped quickly. The witnesses Evans and Donald Kistler, who were riding in the car and got out immediately after the collision, testified that the car was then parallel with the curb on the north side of Park Street at a point twenty to thirty feet west of the Alabama Street crossing, and these two witnesses, as well as the witness Barker, said it was then about three feet away from the curb.

If defendant's statement that when he approached the east line of Alabama Street he was midway between the street-car track and the curb on the north side of Park Street, headed due west, be taken as true—and there was no evidence to the contrary—and the testimony of the plaintiff and the witnesses Barker, Evans and Donald Kistler as to the location of the car immediately after the accident, be also accepted, it follows that defendant was in error as to the point and cause of the collision, and that at some point beyond the east line of Alabama Street he turned the course of his car to the northwest toward the Park Street curb, and immediately before the accident again changed its course by "swerving to the left" so as to bring it parallel with the curb and about three feet therefrom, and that the collision in fact occurred just at the

[72 Mont. 356.]

time the defendant turned his car so that it was headed due west. This would accord with plaintiff's statement, and the jury might reasonably have concluded that the accident happened in the manner testified to by him. They might likewise have reasonably concluded that the plaintiff was in plain view while the defendant was approaching him from across the street; for Mrs. Kistler, who was on the back seat of the car, testified that before they reached the east line of Alabama Street, she saw the plaintiff on his bicycle riding down the side of that street toward Park Street, but that it gave her no concern because she supposed, of course, he would make the turn.

Clem Vogel from across the street saw the plaintiff come down Alabama Street and turn west. Edlo Champion and Lester Hartsell saw him make the turn and proceed west along the curb while they were at a point on Park Street 200 feet east.

There were no other vehicles of any kind on the street at the time; it was entirely open, free from traffic and lighted; its whole width for the time being was for the use of plaintiff and defendant, subject only to the rights of the other; both plaintiff and defendant had good eyesight.

Automobiles and bicycles have equal rights in the use of [2] streets, the drivers of each owing a duty to the other to exercise reasonable care. (Berry on Automobiles, p. 876, sec. 963.)

On approaching the street intersection it was the duty of plaintiff and defendant each to keep a lookout ahead. He was not only required to look, but look in such an intelligent and careful manner as to enable him to see the things which a person in the exercise of ordinary care and caution for his own safety and the safety of others would have seen under like circumstances. (*Bramley* v. *Dilworth* (C. C. A.), 274 Fed. 267; *Keith* v. *Great Northern Ry. Co.*, 60 Mont. 505, 199 Pac. 718; *McDonald* v. *Yoder*, 80 Kan. 25, 101 Pac. 468.)

Under the defendant's theory of the case, if the plaintiff had looked before attempting to cross the street, he could not have failed to see the approaching car. If he saw the car coming in time to stop his bicycle so as to avoid the accident and then either thoughtlessly or willfully undertook to pass in front of it and was injured in consequence of the attempt, he was guilty of culpable negligence himself which so far contributed to his injuries as to deprive him of the right to recover from the defendant, even though the defendant himself may have been guilty of negligence. (*Hunter* v. *Montana Central Ry. Co.,* 22 Mont. 525, 57 Pac. 140.) Looking at the incident, however, from the light of the plaintiff's recital, he had made the turn into Park Street at a proper place, and was riding west on that street in a place where he had a right to be, within three feet of the curb; he was in plain view of the defendant while the latter was driving his car for a distance of fifty or sixty feet immediately before the collision; there was an open and unobstructed portion of the street at his left, as much as twenty-four feet wide, between his bicycle and the car track, which defendant could have used in passing him. With this condition of the street and the traffic, it cannot be said, as a matter of law, that plaintiff was guilty of negligence when he turned into Park Street.

If plaintiff was riding five miles per hour and was ten feet along on Park Street when overtaken, and, if defendant was driving his car at fifteen miles per hour as he crossed the street, a mere mathematical calculation demonstrates that defendant was between twenty and thirty feet away from the corner when plaintiff turned. A jury might reasonably find that if defendant was looking ahead, and watching the course of his car in a careful and intelligent manner, he could and would have seen the plaintiff, turned to his left and so have avoided the accident.

It has been laid down in many decisions by this court that [3] when a motion for a directed verdict is being considered, every inference which may fairly be drawn from the testimony

is to be indulged in favor of the plaintiff; that a plaintiff is entitled to the benefit of any evidence given during the course of defendant's case, and that no case should ever be withdrawn from a jury when reasonable men might draw different conclusions from the evidence. (*Mitchell* v. *Northern Pac. Ry. Co.,* 63 Mont. 500, 208 Pac. 903; *In re Carroll's Estate,* 59 Mont. 403, 196 Pac. 996; *Moran* v. *Ebey,* 39 Mont. 517, 104 Pac. 522; *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871.)

There was a conflict in the evidence, and the questions of defendant's negligence and the plaintiff's contributory negligence were properly submitted to the jury.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY and MATTHEWS concur.

MR. JUSTICE GALEN, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.