NANGLE, Administratrix, Respondent, *v.* NORTHERN PACIFIC RAILWAY CO. et al., Defendants; FIRST NATIONAL BANK & TRUST CO., Executor, Appellant.

(No. 7,214.)

(Submitted March 8, 1934. Decided April 13, 1934.)

[32 Pac. (2d) 11.]

*Mr. John K. Claxton* and *Mr. George Y. Patten,* for Appellant, submitted an original, a reply and a supplemental brief; *Mr. Patten* argued the cause orally.

*Mr. Lester H. Loble, Mr. Hugh R. Adair* and *Mr. Fred R. Lay,* for Respondent, submitted an original and a supplemental brief; *Mr. Adair* argued the cause orally.

516

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff, as administratrix of the estate of Thomas Nangle, deceased, brought this action against the defendant bank, as executor of the last will and testament of Charles Benton Power, Jr., deceased, and others, to recover damages for the death of Thomas Nangle. The action involves the Automobile Guest Act of 1931 (Laws 1931, Chap. 195).

Shortly after 6 o'clock on the morning of December 21, 1931, Thomas Nangle was killed in an automobile accident occurring on the highway leading from Bozeman to Helena, and known as Federal Highway No. 10, at the point of its crossing the Northern Pacific Railway Company's main track about two miles west of Bozeman, while he was riding as a guest in the automobile owned and driven by Charles Benton Power, Jr. These parties, and others, drove from Helena to Bozeman in two cars on Saturday afternoon, December 19, 1931, over Highway No. 10. At the time of the departure of Nangle and Power from Bozeman it was a dark morning, although the skies were cloudless and the stars were shining. The road from Bozeman to the crossing and beyond was either paved or oiled. At or near the railway crossing, however, it was an oiled highway. Power was driving the automobile and Nangle was asleep with his head "on the back seat and his feet stretched out onto the floor," and his shoes off. The car driven by Power was a Ford sedan.

Power testified at the coroner's inquest, and this testimony was produced and received in evidence upon the trial; he having died during the time intervening between the inquest and the day of trial. All the witnesses agree that the road from Bozeman to the point where the road curves immediately before crossing the railway was free from snow and ice on the oiled or the paved portion thereof. The highway immediately before coming to the curve is approximately straight for about three-quarters of a mile. The road curves sharply to the north across the railroad track. Approaching the curve from Bozeman for a distance of over 3,000 feet no obstructions exist to interfere with the view of the driver of an automobile proceeding westerly along the highway from the direction of Bozeman. At a distance of 465 feet from the highway crossing of the railway there was on the day in question a "curve to the right" sign. This sign was an enameled metal sign 2 feet square, suspended on a 4x4 post painted white. It is in yellow or orange with black letters 6 inches high. The letters on the sign spell the word "Curve," and there was an arrow in the lower portion of it showing the direction of the curve to the right. The post bearing this sign was about 11 feet from the northerly edge of the oiled or paved portion of the highway.

It was testified to on the trial that as a result of tests made with an automobile driven at night of the same kind and model as the automobile in question, the sign just mentioned could be observed for a distance of 589 feet, and that the lettering appearing thereon could be read at a distance of 164 feet. At a distance of 415 feet from the crossing a second sign was located, being the conventional highway railway crossing sign and made of metal, mounted on a 4x4 post. This metal sign was two feet in diameter, with a large black cross through the center. On the upper portion of it appeared the letters "R R," six inches in height; and the sign itself stood the same distance from the edge of the improved portion of the highway as the other sign. Similar testimony was offered as a result of tests made as to the ability of the driver of an

automobile to observe and read this sign, which could be observed and read at the same distances as the "Curve" sign.

The highway runs parallel with the railway for a distance of some 3,000 feet from the crossing, and the highway over this distance is approximately 89 feet distant from the railway. At the highway crossing a standard crossing marker was located on a 10-inch post, 11 feet high, bearing cross-arms 7 feet long. This sign can be observed in the daytime, from the driver's seat of an automobile traveling in a westerly direction, for a distance of 3,000 feet.

As Power approached the turn for the crossing his lights were burning so that he could see the curve. He testified that he was driving from 35 to 40 miles an hour down the highway, and did not reduce his speed either for the curve or the crossing. When he began to go around the curve, he immediately took his foot off the accelerator, and, as he made the turn, he encountered ice, felt the car slip, and it went over. He did not apply the brakes, because, as he testified, that would make the car slip the more. While the car was reposing on its side, Nangle spoke to Power, and before he could extricate himself from the car, a Northern Pacific freight train collided with the car and removed the front wheels and the motor from the body of the car. Thereafter it was found that Nangle was dead.

According to some of the witnesses, the oiled portion of the road on the curve and the approach to the crossing was free from ice and snow, although they stated that ice was present on the shoulders of the highway at this point. Other witnesses testified that the oiled portion on the left-hand side of the road at this point was covered with ice.

At the close of the plaintiff's case a motion for nonsuit was sustained as to all the defendants except defendant bank as executor of the last will and testament of Power, deceased, and as to the bank the motion was denied. A motion on behalf of the bank for a directed verdict was denied. The case was submitted to the jury, which returned a verdict for $10,000 for the plaintiff. Judgment was entered in accordance

with the verdict. The appeal is from this judgment against the defendant bank.

The bank, the sole appellant here, assigns as error the ruling of the trial court on its motion for nonsuit, its motion for directed verdict, and the making and entering of judgment against it.

In order to review these specifications of error it becomes ██ necessary for us to construe certain portions of Chapter 195 of the Laws of 1931, wherein it is provided:

"Section 1. The owner or operator of a motor vehicle shall not be liable for any damages or injuries to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, nor for any damages to such passenger's or person's parent or guardian, unless damage or injury is caused directly and proximately by the grossly negligent and reckless operation by him of such motor vehicle.

"Section 2. Any person riding in a motor vehicle as a guest or by invitation and not for hire, assumes as between owner and guest the ordinary negligence of the owner or operator of such motor vehicle.

"Section 3. The ordinary negligence of the owner or operator of a motor vehicle as between owner and guest is imputed to any person riding in such vehicle as a guest or by invitation and not for hire."

It is conceded that Nangle at the time of his death was a guest riding in the automobile, owned and operated by Power at the time of the injury, by invitation and not for hire. Under these admitted facts and the provisions of the Act, the appellant was not liable unless the damage or injury was caused directly and proximately by the grossly negligent and reckless operation of the automobile by Power. It therefore becomes necessary for us to give consideration to the scope and effect of the above-quoted Act of the legislature.

Prior to this enactment the law in this jurisdiction made it incumbent upon the driver of an automobile to use reasonable care for his guest's safety. (*McNair* v. *Berger*, 92 Mont. 441, 15 Pac. (2d) 834.) It is obvious from an examination of

the entire Act that a guest, his parent or guardian, may not recover from the driver of an automobile for any injury the proximate cause of which was the ordinary negligence of such driver. Counsel for appellant argue that in order for plaintiff to recover it must be established, at least prima facie, that the driver of the automobile in question was guilty of wilful and wanton misconduct. In support of this contention they cite numerous cases under the Michigan statute, which provides that no recovery may be had under similar facts unless the accident "shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle." (Comp. Laws Mich. 1929, § 4648.) The Michigan court, however, has said that in their jurisdiction there is no such thing as "gross negligence, in the sense of great or much negligence." (*Union Trust Co.* v. *Railway Co.*, 239 Mich. 97, 214 N. W. 166, 167, 66 A. L. R. 1515.) And again the same court has said with reference to the quoted statute: "The term 'gross negligence,' as employed in this statute, does not mean something of less degree than willful and wanton misconduct." (*Oxenger* v. *Ward*, 256 Mich. 499, 240 N. W. 55; *Bobich* v. *Rogers*, 258 Mich. 343, 241 N. W. 854.)

As was pointed out by this court in *Liston* v. *Reynolds*, 69 Mont. 480, 223 Pac. 507, we have numerous statutes of long standing recognizing degrees of negligence. To those there cited might well be added section 8658, Rev. Codes 1921. Furthermore, this court has recognized a distinction between willful injury and negligence. (*Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226.) Hence the Michigan court decisions interpreting their statute are of no persuasive force, since the courts of that state refuse to recognize certain distinctions which for many years have been observed by both the legislative and judicial departments of our state government, and from which we are not free or inclined to depart.

Likewise in support of this contention many decisions by the supreme court of Iowa under a statute limiting the recovery by the guest to injuries resulting from "reckless operation" of

an automobile are called to our attention. (Iowa Code 1927, sec. 5026–b1.) It is noteworthy that the Iowa court does not recognize any such thing as degrees of negligence; and even though negligence is great, it says it is still negligence. (*Hannah* v. *Central States Elec. Co.*, 210 Iowa, 864, 232 N. W. 421; *Phillips* v. *Briggs*, 215 Iowa, 461, 245 N. W. 720.)

The plain intention of the legislature in enacting Chapter 195, supra, was to relieve the owners and operators of automobiles from liability for injuries to guests proximately caused by ordinary negligence, but not otherwise change the liability of owner or operator of an automobile to his guest. This conclusion is fortified when reference is made to the title of this Act. The pertinent portion thereof declares: "An Act Releasing Owners and Operators of Motor Vehicles From Responsibility for Damages or Injuries to Gratuitous Passengers; Providing such Passenger Assumes the Ordinary Negligence of such Owner or Operator; and Providing the Ordinary Negligence of such Owner or Operator is Imputed to such Passenger; Excepting Owners or Operators of Motor Vehicles Whose Gross Negligence or Reckless Operation was the Proximate Cause * * * ." The title of an Act is indicative of the legislative intent in passing it. (*State ex rel. Smith* v. *Duncan*, 55 Mont. 376, 177 Pac. 248.)

"Gross negligence" and "reckless operation" are variously defined by different courts. Most, if not all, of them are of little assistance in the classification of various states of facts within or without such definitions. Under the construction of this statute herein announced, whether "gross negligence" and "reckless operation" are synonymous or said to be different in meaning one from the other is immaterial, for if the conduct of the driver of the automobile was in fact something more than ordinary negligence, it matters not, under the Act in question, by what name it is called, or by what adjective it may be described; the defendant is nevertheless liable. Ordinary negligence is the absence of ordinary and reasonable care. Ordinary and reasonable care is that degree of care which

prudent persons in the circumstances of each case would be likely to exercise. (*Liston* v. *Reynolds*, supra.)

This court has often announced the rule that upon motion for nonsuit or directed verdict, the evidence must be viewed from the standpoint most favorable to plaintiff, and every fact must be deemed proved which the evidence tends to prove. (*Staff* v. *Montana Petroleum Co.*, 88 Mont. 145, 292 Pac. 1042.) No case should ever be withdrawn from a jury when reasonable men might draw different conclusions from the evidence. (*Pratt* v. *Kistler*, 72 Mont. 356, 233 Pac. 600.)

From an examination of the evidence, viewed in accordance with these rules, we find that we have before us for consideration the following facts: That the driver of the automobile was during hours of darkness proceeding along an oiled road at a speed of from 35 to 40 miles an hour and approaching a sharp curve immediately before a railroad crossing; that two signs were located along the highway, one at a distance of 465 feet and the other 415 feet from the railroad crossing, and visible to a motorist approaching them for a distance of 589 feet from their respective locations, the lettering thereon being visible to such motorist for a distance of 164 feet; that the driver proceeding along the highway in the night-time, with these warning signs clearly visible for the stated distances, proceeded past them and approached the curve without reducing his speed; that the car which he was driving is not shown to have been otherwise than in good working condition; that the road over which he was proceeding is oiled, 18 feet in width; that over such area there was neither snow nor ice, although it existed on the shoulders on both sides of this portion of the highway; that during the course of a conversation had some days subsequent to the accident, the driver of the car stated that he was at the time of his approach to the curve going too fast, that he knew the road like a book, and that he had proceeded over the same crossing and around the identical curve on the preceding day; that while he was proceeding around the curve or was on the approach to the crossing, he felt the car skid or slip on the ice and removed his foot from

the accelerator; and that the car overturned on the railway crossing, which resulted in the injury and death of Nangle. Viewing these facts altogether, the question is fairly presented: Would reasonable men all agree that Power, the driver of the car, was not grossly negligent?

Counsel for appellant have cited many cases from Iowa and Michigan in support of their contention that the evidence is insufficient to support a finding of gross negligence. The courts of last resort in those states have construed their statutes, whatever the language embodied in them may be, as preserving to the guest a right of action against the owner or operator of an automobile where his conduct amounts to inflicting a wilful injury upon his guest. We have stated our reasons for declining to be impressed by or persuaded to follow such cases, and, therefore, it is unnecessary for us to give them further attention.

Appellant also cites many cases where one or more, but not all, of the facts here involved were present, and wherein it was held that gross negligence was not established. The question here for solution is not whether any of these enumerated facts, standing alone, will sustain an allegation of gross negligence and reckless operation, but whether all of them viewed together will maintain the allegation.

In many cases, under statutes permitting recovery on behalf of the guest as against the driver of an automobile for gross negligence—where the driver, proceeding at an excessive rate of speed, failed to heed warning signals on approaching a curve in the road, and where he was acquainted with the locality in which he was driving, and where, under these conditions, on approaching a curve, he failed to reduce his speed and, proceeding around such curve, overturned his car or collided with objects resulting in injury to the guest—it is held that whether the driver was guilty of gross negligence was for the jury. (*Sorrell* v. *White,* 103 Vt. 277, 153 Atl. 359; *Welch* v. *Auseth,* 156 Wash. 652, 287 Pac. 899; *Zelinsky* v. *Howe,* 163 Wash. 277, 1 Pac. (2d) 294; *Taylor* v. *Cockrell,* 116 Cal. App. 596, 3 Pac. (2d) 16; note, 86 A. L. R. 1145.)

We therefore conclude that under the facts and circumstances in this case, viewed in the light most favorable to the plaintiff, all reasonable men would not agree that Power, the driver of the automobile, was not grossly negligent in its operation. Accordingly, the court was not in error in denying the motion for nonsuit nor that for a directed verdict.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

Rehearing denied May 5, 1934.