WESTERGARD, APPELLANTS, v. PETERSON, RESPONDENT.

Nos. 8545 and 8546

Submitted June 6, 1945. Decided June 16, 1945.

159 Pac. (2d) 518

Mr. Theodore F. McFadden and Mr. Leonard A. Schulz, both of Dillon, for appellants.

Mr. T. J. Davis, of Butte, Messrs. Gilbert & Gilbert, of Dillon, and Mr. John R. Cook, of Missoula, for respondent.

MR. JUSTICE ANGSTMAN, delivered the opinion of the court.

This is an appeal from a judgment in two actions consolidated for trial. Vic Westergard is plaintiff in one action and his wife, Leona, is plaintiff in the other. Herman Peterson is the defendant in both actions.

Both plaintiffs seek damages as a result of personal injuries sustained in the same automobile accident. Both plaintiffs were guests riding with defendant in defendant's car which was driven by defendant when the accident occurred. The accident was due to the driving of defendant's car into a trailer attached to a truck which was traveling on the highway in the same direction as defendant.

Plaintiffs in their complaint charge gross negligence on the part of defendant, consisting of excessive speed, failure to maintain a proper lookout for other vehicles on the highway, failure to turn sufficiently to the left to avoid hitting the trailer, and failure to drive and operate his car in a careful manner. The answers were general denials with affirmative defenses wherein it was alleged in substance that plaintiffs were guilty of contributory negligence and assumption of the risk in voluntarily riding in the car driven by defendant when they knew that he was ''greatly exhilarated and somewhat under the influence of intoxicating liquor'' furnished to defendant by plaintiff Vic Westergard and his brother Pete.

At the conclusion of all of the evidence defendant's motion for directed verdict was sustained. Pursuant to the direction

of the court, the jury returned a verdict for defendant on which the judgments appealed from were entered.

The sole question presented on the appeal is whether the court was justified on the record in taking the case from the jury.

In considering this question we keep in mind the rule that upon motion for nonsuit or directed verdict we must view the evidence from the standpoint most favorable to plaintiffs and every fact must be deemed proved which the evidence tends to prove (Staff v. Montana Petroleum Co., 88 Mont. 145, 292 Pac. 1042; Gerard v. Sanner, 110 Mont. 71, 103 Pac. (2d) 314), and that no case should be taken from the jury when the evidence is such that reasonable men might draw different conclusions therefrom. Pratt v. Kistler, 72 Mont. 356, 238 Pac. 600; Nangle v. Northern Pac. R. Co., 96 Mont. 512, 32 Pac. (2d) 11; Blinn v. Hatton, 112 Mont. 219, 114 Pac. (2d) 518.

As above noted the plaintiffs were guests of the defendant and in order for plaintiffs to recover against the defendant under our statute section 1748.1 et seq., it was incumbent upon them to show grossly negligent or reckless operation of the automobile by the defendant, because as guests the plaintiffs assumed the ordinary negligence of the defendant (section 1748.2, Revised Codes), or as stated in section 1748.3 the ordinary negligence of the operation is imputed to the guest riding in the vehicle.

Did the evidence offered by plaintiff make out a case of gross negligence sufficient for the jury's consideration? The evidence shows that the two plaintiffs and the defendant Peterson left Dillon at about 4 o'clock in the morning of November 6, 1940, going to the Centennial Valley situated in the southern end of Beaverhead county. At about the same time another car, driven by Pete Westergard, a brother of plaintiff Vic Westergard, left Dillon going to the same place. In Pete Westergard's car were his wife Rose and a man by the name of Charles Pilgrim. All parties were on a wild goose hunt. The evidence offered by plaintiffs showed that they took with them a quart

of whiskey and a quart of wine furnished by Vic and Pete Westergard, a fourteen-pound roasted turkey, other lunch material, and facilities with which to make coffee. They arrived in the Centennial Valley at about 7 a. m., and all had a drink—plaintiff Vic Westergard drinking wine and all the rest whiskey. They hunted until about 9 o'clock when they returned to the cars and had a second drink. They then drove farther up the valley and engaged in more hunting, after which they returned to the cars, had another drink and then ate the turkey and lunch. At about 2 o'clock they started back to Dillon. They reached the town of Lima at about 4 o'clock in the afternoon. They spent some time servicing their cars and then went to Mecham's Bar, where each of the four men bought a round of drinks for the party. At about 5 o'clock they left for Dillon. Pete Westergard started ahead of the Peterson car. He had with him his wife Rose and Charles Pilgrim. Shortly after his car left the defendant Peterson left and both of these plaintiffs were riding with him. All three were in the front seat. Defendant Peterson was driving and Mrs. Westergard occupied the middle of the seat and Vic Westergard sat on the right.

About two or three miles north of Lima defendant's car passed Pete Westergard's car. According to the testimony of the plaintiffs the defendant Peterson shortly after passing Pete Westergard's car, accelerated the speed of his car until he had reached 89 miles per hour, and that continuing at this speed at a point about 17 miles north of Lima he overtook a truck to which was attached a trailer, and that in attempting to pass the truck and trailer, which was traveling on its right-hand side of the road, because of the speed at which he was traveling, defendant was unable to go around the truck and trailer, and instead of passing, he crashed into the trailer. After doing so his car left the road and came to rest in a water-filled borrow pit adjacent to the westerly or left-hand side of the highway. The trailer and truck were traveling about 25 to 27 miles per hour when defendant struck the trailer. The accident occurred, according to some of the witnesses, between 5:20 and 5:30 at dusk at a

time when it was difficult to see either with or without lights. The lights of the defendant's car had been turned on at the time it passed Pete Westergard's car and remained on until the time of the accident. The evidence is not clear as to how far the defendant's car was from the trailer at the time it was first observed by the occupants of the car, but there was evidence that the trailer had a light displayed. There was evidence by the plaintiffs that they endeavored to persuade defendant to slow down in his driving before the accident, but their attempts were in vain. Plaintiff Leona Westergard said she knew defendant was driving 89 miles per hour because she looked at the speedometer and it showed that speed. Defendant sought to show that in her position in the car it was impossible for her to see the speedometer which was situated on the panel directly in front of the driver. Even if defendant's contention in this regard be correct, it would not aid defendant because both plaintiffs testified that when they tried to get defendant to slow up he said that he was only going 89 miles per hour. Hence, there was substantial credible evidence that defendant was traveling 89 miles per hour at the time of the accident. Evidence submitted by plaintiffs was to the effect that none of them were intoxicated or under the influence of intoxicating liquor. The evidence introduced by plaintiffs shows that both plaintiffs were severely injured as a result of the collision, but the extent thereof need not now be considered.

The record shows that defendant pleaded guilty to a charge of driving in excess of 55 miles per hour during the nighttime and paid a fine of $50 in a justice of the peace court, the charge being based upon the driving at the time involved in these actions. Plaintiffs submitted proof that defendant made statements that it was all his fault and he was driving too fast. He denied making these statements. Most of the evidence offered by plaintiff was contradicted by defendant. He said he was driving around 60 miles per hour at the time of the crash. He said that a car coming in the opposite direction with its lights on and undimmed affected his vision so that he did not see the

trailer until too close to avoid it. The driver of the truck and trailer testified, however, that he did not meet a car with lights on going in the opposite direction. Defendant said too that the trailer was about two feet to the left of the center line of the highway. He said the party took two quarts of whiskey with them instead of one quart, and that each one in the party had about 50 drinks during the day. When asked whether they were intoxicated, he said: ''We were not sober and we were not drunk. We were just having a good time.'' After taking the four drinks at Lima he said that he and the plaintiffs were somewhat exhilarated and somewhat under the influence of liquor.

Defendant did not assert however that the drinking affected his ability to drive the car, and in fact alleges in his answer that at all times he ''had his automobile under complete control.''

Defendant counts strongly upon the cases of Morton v. Mooney, 97 Mont. 1, 33 Pac. (2d) 262; Casey v. Northern Pac. R. Co., 60 Mont. 56, 198 Pac. 141, and like cases to the general effect that the evidence offered by and in behalf of plaintiff is so improbable in some respects as to be unworthy of belief and amounts to no evidence at all. This defendant contends is true as to the testimony of plaintiffs that they and defendant were not drunk or under the influence of intoxicating liquor, and that therefore they assumed the risk of riding with defendant whom they knew was intoxicated. We do not agree with defendant that plaintiffs' evidence on the question of intoxication is unworthy of belief. There is no evidence in the record aside from the accident itself that any member of the party acted as if under the influence of intoxicating liquor. According to all of the evidence each of them had about the same number of drinks, the difference being that plaintiff Vic Westergard drank wine and not whiskey. Pete Westergard apparently had no difficulty in driving his car carefully. The question of whether defendant was intoxicated and the extent thereof were questions of fact for the jury. The evidence on the point was such that different minds might reach different conclusions. It was

of course conceded that all parties had been drinking but there was no evidence tending to show what effect the drinking had upon the ability to drive the car, or that the adverse effect, if any, was so apparent that plaintiffs should, as matter of law, be chargeable with assuming all risks in voluntarily riding with defendant.

The case is quite similar to that of McNair v. Berger, 92 Mont. 441, 15 Pac. (2d) 834, and Wise v. Stagg, 94 Mont. 321, 22 Pac. (2d) 308, where this court held the question was for the jury.

Defendant contends also that other discrepancies and contradictions in the testimony of plaintiffs makes it unworthy of belief. Thus plaintiffs' witnesses did not all agree as to the precise time of the accident, the precise time when they left Lima, the rate of speed they were traveling at different times, the time consumed in going from one place to another, the distance the trailer was from their car when it was first seen, the time elapsing from the time the trailer was first seen until it was struck, and the like. Likewise in some instances the same witness made contradictory statements on some of these points. Most of these discrepancies arose out of collateral issues which had no decisive bearing upon the ultimate outcome of the case. The witnesses conceded that they were largely guessing as to time, distance and speed. The precise time of the collision might have had an important effect upon the jury's verdict. In other words, it might have become important for the jury to determine whether Chapter 198, Laws of 1939, had been violated by driving in excess of 55 miles per hour. But even if that statute had no application, i.e., even though the accident happened in the daytime, it is our view that it was for the jury to say whether defendant was driving 89 miles per hour, as testified to by plaintiffs, or only 60 as stated by defendant, and whether in either event driving at such speed under the circumstances would amount to gross negligence. Even if defendant's version of the facts be accepted, viz., that he was driving 60 miles an hour, and an on-coming car failed to dim its lights as they met, thus making

it impossible for him to see, and doing nothing more than what he did to slow up his speed, it would still be for the jury to say whether that was gross negligence.

On this point defendant testified:

"Q. Tell us what you did, if anything, when you were unable to see down the highway after you were blinded? A. I slowed up.

"Q. To what speed? A. Just gradually, I just gradually took my foot off a little bit, just kind of gradually slowed up, just kind of eased off a little.

"By the Court: He said he took his foot off the accelerator.

"A. I didn't take it clear off until after it passed the car."

We find the record viewed in the light most favorable to plaintiffs contains substantial credible evidence on which reasonable minds might reach different conclusions and that, therefore, the court erred in sustaining the motion for directed verdict.

The judgment is reversed and the cause remanded for trial.

Appellants will recover their costs on these appeals.

Mr. Chief Justice Johnson, and Associate Justices Morris, Adair, and Cheadle, concur.