JAMES V. CARTER, Plaintiff and Respondent, v.
CHARLES N. MILLER, Defendant and Appellant.

No. 10233.

Submitted March 12, 1962. Decided June 12, 1962.

372 P.2d 421.

Lyman H. Bennett, Jr. (argued orally), Bozeman, for appellant.

Landoe & Gary, Bozeman, Hjalmar H. Landoe (argued orally), Bozeman, Joseph B. Gary (argued orally), Bozeman, John H. Jardine (appeared), Whitehall, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the defendant, Charles N. Miller, from a verdict and judgment in favor of the plaintiff, James V. Carter, in the sum of $50,404.35. The action is to recover damages for injuries alleged to have been sustained by the plaintiff while riding as a guest passenger in an automobile owned and operated by the defendant.

The complaint alleges: That at all times material hereto, the defendant, Charles N. Miller, was the owner of a certain Volkswagen automobile; that on November 7, 1958, at 9:00 P.M., the defendant was driving said automobile, in which the plaintiff, James V. Carter, was riding as a guest passenger, on a road known as "Spanish Creek Road" in Gallatin County, Montana; that said road "is a mountain road and runs in an easterly-westerly direction and is unpaved and has a gravel and rock base"; that said road "terminates at its easterly end in an intersection and cars driving east on said road are required to turn right or left at the terminal end of said road"; that the defendant had driven over said road on numerous occasions "and knew of the termination point of said road and the care required in driving said road"; that the defendant drove said automobile in such a grossly negligent, careless, and reckless' manner that he failed to negotiate a right hand turn at the termination point of said Spanish Creek Road and caused said automobile to leave said road and overturn; that as a result thereof, the plaintiff suffered very severe and painful injuries which included a broken neck and a fracture of the skull; that the defendant's gross negligence, carelessness, and recklessness were the proximate cause of the plaintiff's injuries; and that as a result of the aforesaid the plaintiff suffered damages in the sum of $218,404.35.

As acts of gross negligence the plaintiff alleges: (1) driving at a highly dangerous and excessive rate of speed under the cir-

cumstances existing at the time and the place of the accident; (2) negligently, carelessly, and recklessly failing to exercise proper care at the approach of the turn; (3) negligently, carelessly, and recklessly failing to use due care according to the condition of the Spanish Creek Road and the type of intersection involved; (4) negligently, carelessly, and recklessly failing to keep a "proper look-out for the turn that the defendant was required to make at the end of the road, which turn the defendant knew was required by him to be made"; and, (5) failing to drive "in a manner consistent with due caution and due care considering the type of road upon which the defendant was driving, and which road the defendant knew well and had driven on numerous occasions."

The defendant demurred to the plaintiff's complaint upon the ground and for the reason that it failed to state facts sufficient to constitute a cause of action. The demurrer was, by the district court, overruled and the defendant given time in which to further plead.

The defendant thereafter answered, admitting that he was the owner of a Volkswagen automobile at all times material hereto; that he was driving said automobile east on Spanish Creek Road on the date in question; that the plaintiff was riding with him; that the Spanish Creek Road runs in a general easterly-westerly direction and is an unpaved country road; and that said road terminates at its easterly end into a "T" intersection. The defendant denied all the other allegations of the plaintiff's complaint and alleged affirmatively the defenses of contributory negligence and assumption of risk.

The facts as disclosed by the record are as follows:

On November 7, 1958, the plaintiff, James V. Carter, and one Ralph Simons left Boulder, Montana, on an elk hunting trip. At approximately 5:00 P.M., they arrived at the Spanish Creek Ranch in Gallatin County, Montana, which was then managed by one Archie Martin, brother-in-law of the plaintiff and father-in-law of the defendant, Charles N. Miller.

At approximately 6:00 P.M., while Martin, Simons, and the plaintiff were preparing dinner, the defendant arrived at the Spanish Creek Ranch accompanied by one Ozzie Bennett. The defendant and Bennett had just driven in from a hunting camp west of the Spanish Creek Ranch, where Bennett and his wife were staying.

After dinner, when it was time to return Bennett to the hunting camp, the defendant invited Simons and the plaintiff to go along with him. At the trial, the plaintiff testified that he had no reason for going to the hunting camp other than to provide company for the defendant, who would otherwise have had to return from the camp alone.

On the way to the hunting camp, the defendant drove his two-door, four-passenger Volkswagen automobile, which he had purchased some eighteen months prior thereto. The plaintiff rode on the front seat to the right of the defendant; Simons and Bennett rode on the rear seat.

In going to the hunting camp, the defendant drove north along the old Bozeman-West Yellowstone highway, and turned west at a ''T'' intersection onto the Spanish Creek Road (the Spanish Creek Road terminates at its easterly end in said intersection and cars traveling east on Spanish Creek Road are required to turn either right 90 degrees or left 90 degrees upon entering said intersection). From the intersection west toward the hunting camp, the road was upgrade all the way, and according to the undisputed testimony, was a ''washboardy,'' rough, sandy, ''winding and rolling'' country road.

At the trial, Ralph Simons, testifying in behalf of the plaintiff, stated that the automobile, in going to the hunting camp, was traveling at approximately 25 to 30 miles an hour; that the automobile ''was all over the road'' and ''seemed to bounce a lot and also sway a lot''; that the defendant's driving made him ''uneasy''; and that he *warned* the defendant, on the way to the camp, to slow down or ''all of us would be walking out.''

This testimony was corroborated by that of the plaintiff. The

defendant, on the other hand, admitted that the automobile was "bouncing" and "swaying" but denied that it was serious or that he was warned to slow down.

The defendant and the occupants of his automobile reached the hunting camp at approximately 8:00 P.M., let Bennett out, and, after a 45 minute visit, started on the return trip, returning over the same road which they had just traversed in going to the camp. The defendant and the plaintiff, on the return trip, rode on the front seat of the automobile, the defendant driving the same; Simons occupied the rear seat.

The plaintiff testified that on the return trip, while traveling east on Spanish Creek Road, the automobile was traveling downgrade 35 to 40 miles per hour; that "it was bouncing along the road very much, and the rear end was swerving back and forth a lot from this washboard"; that he "began to get nervous and upset"; that at a point approximately three miles from the "T" intersection (where cars traveling east on Spanish Creek Road are required to make a 90 degree turn either to the right or to the left onto the old Bozeman-West Yellowstone highway), he warned the defendant to slow up; that Simons told the defendant that they were not "in a big hurry"; that at a point approximately 250 to 300 feet from the "T" intersection he warned the defendant again to "slow up and watch it"; that the defendant ignored him, "did not let up on the gas", and "just kept driving straight on ahead"; that the defendant failed to make a right-hand turn at the "T" intersection; that the automobile thereupon overturned with its occupants, including the plaintiff, therein; that he does not know whether the defendant applied his brakes upon entering the intersection; that he was rendered unconscious when the car overturned; and that as a result of the accident he suffered serious injuries of which he still complains.

Ralph Simons testified that on the return trip, which was downgrade, the automobile was traveling approximately 35 miles per hour; that the defendant traveled appreciably faster

on the way down from the hunting camp than he did on the way up; that it was faster than was "ordinary" or "necessary"; that because of the manner in which the defendant was driving, he, Simons, was compelled to sit in the center of the rear seat and hold onto the side straps with both hands; that both he and the plaintiff warned the defendant to slow down; that the defendant ignored all such warnings; that on one occasion the defendant remarked that since he could operate an airplane he should be able to operate the car; that within three hundred feet of the "T" intersection, the plaintiff told the defendant, in a normal tone of voice, to "watch it"; that within a few seconds the car turned "end over end onto its side" on past the intersection; that he does not recall whether the defendant applied his brakes upon entering the intersection; that he and the defendant helped the plaintiff out of the wreckage; and that the plaintiff, as a result of the accident, was very seriously injured.

The defendant, who testified both as an adverse witness and as a witness in his own behalf, made, among others, the following statements and admissions: That, on the return trip from the hunting camp, he was driving his automobile at a rate of speed of between 25 and 30 miles per hour; that he drove no faster down from the camp, although there was a fairly steep downgrade, than he did going up; that he "heard" no complaint about the speed or the manner in which he was driving his automobile; that he had driven over the same route here in question many times prior to the accident; that several of those trips were made in the automobile here involved; that he was fully aware of the "T" intersection, its location, and the condition thereof; that he knew that the Spanish Creek Road terminated at said intersection, that cars traveling in an easterly direction thereon were required to make either a right or a left hand turn, and that each turn formed a 90 degree angle; that, as he approached the "T" intersection, he looked away from the road towards the Spanish Creek Ranch to see if any lights

were on; that when he looked back towards the road "the intersection was right there"; that he then put his foot on the brake and started to turn; that, at that very moment, the plaintiff "hollered 'look out,' and I hit the brakes too hard and rolled over"; that the car rolled some 20 to 25 feet "off the edge of the embankment"; that he helped the plaintiff out of the wreckage and went for an ambulance; and that the defendant was very seriously injured as a result of the accident in question.

It is undisputed that the plaintiff, James V. Carter, at the time of the accident, was a guest riding in the automobile, owned and operated by the defendant, Charles N. Miller. The action, therefore, is based upon our guest statute—R.C.M.1947, §§ 32-1113 to 32-1115, inclusive.

Section 32-1113 provides: "The owner or operator of a motor vehicle shall not be liable for any damages or injuries to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, nor for any damages to such passenger's or person's parent or guardian, unless damage or injury is caused directly and proximately by the *grossly negligent and reckless operation* by him of such motor vehicle." (Emphasis supplied.)

Section 32-1114: "Any person riding in a motor vehicle as a guest or by invitation and not for hire, assumes as between owner and guest the *ordinary negligence* of the owner or operator of such motor vehicle." (Emphasis supplied.)

Section 32-1115: "The *ordinary negligence* of the owner or operator of a motor vehicle as between owner and guest is imputed to any person riding in such vehicle as a guest or by invitation and not for hire." (Emphasis supplied.)

1. It is first contended that the complaint fails to state facts sufficient to constitute a cause of action based on gross negligence. We find no merit in this contention.

"Degrees of negligence are matters of proof, and not of averment; and *a general allegation of negligence,* want of care and skill, etc., *is sufficient in an action for injuries caused by*

such negligence, whether the defendant is liable for ordinary or *gross negligence.*'' (Emphasis supplied.) Sutherland's Code Pleading and Practice, § 4166, p. 2486. See also 65 C.J.S. Negligence, § 187h, p. 901.

On this question, prior to the enactment of the guest statute in Montana in 1931, this court in Pullen v. City of Butte, 38 Mont. 194, 195, 99 P. 290, 21 L.R.A.,N.S., 42, said:

''* * * In Smith v. Buttner, 90 Cal. 95, 27 Pac. 29, the court, in considering the question now before us, said: 'It is well settled that negligence may be charged in general terms; that is, what was done being stated, it is sufficient to say it was negligently done, without stating the particular omission which rendered the act negligent.' In other words, if the doing of certain acts, under certain circumstances, constitutes negligence, it is sufficient after specifying the acts to say that they were negligently done; or, if the failure to do certain acts constitutes negligence, then it is sufficient, after specifying the acts, to say that the defendant negligently failed to do them.'' See also Forquer v. North, 42 Mont. 272, 112 P. 439.

In the case at bar, the complaint specified the particular acts of negligence relied upon, and charged that these acts were done in a grossly negligent manner. This is sufficient under the rules above stated.

Since the enactment of our guest statute this court has considered ''gross negligence'' in numerous cases and has refused to follow the interpretation of the guest statute given by the States of Oregon and Nebraska. See Westergard v. Peterson, 117 Mont. 550, 159 P.2d 518; Batchoff v. Craney, 119 Mont. 157, 172 P.2d 308; Blinn v. Hatton, 112 Mont. 219, 14 P.2d 518.

. In our opinion, the complaint sets forth facts sufficient to withstand the challenge of a general demurrer and to state a cause of action, and it was not error for the district court to overrule the defendant's general demurrer to such complaint.

Furthermore, the defendant answered and went to trial upon the issues, and nothing appears to indicate that he was misled

in any way as to the issues he was to meet and the case appears to have been fairly tried upon the merits.

2. It is also contended that the evidence is insufficient to support the verdict because it fails to show that the plaintiff's injuries were caused by the ''grossly negligent and reckless operation'' of the automobile by the defendant, within the meaning of the Montana guest statute.

In Nangle v. Northern Pacific Railway Co., 96 Mont. 512, 522-523, 32 P.2d 11, 13, this court said:

'' 'Gross negligence' and 'reckless operation' are variously defined by different courts. Most, if not all, of them are of little assistance in the classification of various states of facts within or without such definitions. Under the construction of this statute herein announced, whether 'gross negligence' and 'reckless operation' are synonymous or said to be different in meaning one from the other is immaterial, for if the conduct of the driver of the automobile was in fact something more than ordinary negligence, it matters not, under the act in question [Montana Guest Statute], by what name it is called, or by what adjective it may be described; the defendant is nevertheless liable. Ordinary negligence is the absence of ordinary and reasonable care. Ordinary and reasonable care is that degree of care which prudent persons in the circumstances of each case would be likely to exercise. Liston v. Reynolds, [69 Mont. 480, 223 P. 507].''

And, this court in Blinn v. Hatton, 112 Mont. 219, 223, 114 P. 2d 518, 520, stated:

''The question whether one is guilty of grossly negligent and reckless operation is one for the jury. Nangle v. Northern Pac. Ry. Co., 96 Mont. 512, 32 P.2d 11; Baatz v. Noble, 105 Mont. 59, 69 P. 2d 579. However, this rule is necessarily subject to the limitation that, if on the evidence reasonable men can come to only one conclusion, there is no question for it to decide. * * * McCulloch v. Horton, [102 Mont. 135, 56 P.2d 1344]; Nangle v. Northern Pac. Ry. Co., supra.''

■ From an examination of the evidence, viewed in accordance with the rules above stated, we find that under the facts and circumstances in this case all reasonable men would *not* agree that the overturning of the automobile and the consequent injuries to the plaintiff were not caused by the ''grossly negligent and reckless operation'' of the automobile by the defendant. Whether the defendant was grossly negligent or reckless, therefore, was for the jury to determine.

■ In his brief and argument, the defendant lays much stress on the court's refusal to grant his Instruction No. 16. We have carefully examined his contentions and find that the district judge properly refused this instruction. The defendant offered 43 instructions many of which were repetitious of instructions already given. The court had already given defendant's Instruction No. 2, which in our opinion properly covered his theory of the case and such instruction was more favorable to him. To have given defendant's Instruction No. 16 would have been repetitious.

Finding no reversible error in the record, the judgment of the district court is hereby affirmed. It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and CASTLES concur.