[Civ. No. 249.   Fifth Dist.   Aug. 12, 1963.]

CLARENCE ROBERT PHILPOTT, a Minor, etc., Plaintiff and Appellant, v. SANFORD R. MITCHELL, JR., Defendant and Respondent.

Young, Wooldridge, Paulden & Self and Joseph Wooldridge for Plaintiff and Appellant.

Mack, Bianco, King & Eyherabide, Mack, Bianco, King, Eyherabide, Means & Cooney and Henry C. Mack, Sr., for Defendant and Respondent.

CONLEY, P. J.—Clarence Robert Philpott appeals from a judgment in favor of the defendant, Sanford R. Mitchell, Jr., in an action based upon an automobile accident which happened in Montana and caused serious and permanent injuries to the plaintiff. Both sides agree that the Montana law controls the substantive rights involved. An attempt is also made to appeal from the order denying plaintiff's motion for a new trial; as this is not an appealable order (*Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907]), that portion of the appeal must be dismissed; the order denying the motion for a new trial is reviewable on the appeal from the judgment.

Two points for reversal are urged by the plaintiff: (1) it is contended that the motion for a new trial should have been granted on the ground of newly discovered evidence; (2) it is claimed that the court committed prejudicial error by giv-

ing one of the instructions relating to the law of Montana applicable to a guest's suit to recover damages for his injuries.

    1. *The Trial Court Did Not Commit Error in Ruling on Plaintiff's Motion for New Trial.*

In order that the impact of the motion for a new trial may be entirely clear, it is necessary to review briefly the evidence in the case itself. Three young men, the plaintiff, the defendant and one Eddie Frye lived in Bakersfield. In July or August of 1959 they decided to take a trip to McFarland, about 25 miles north of Bakersfield, and places farther north looking for work. The defendant had a car and offered to take the other two boys as his guests. None of them had enough money to make an extended trip, but the defendant had possession of a Mobil Oil credit card and a Bankamericard. They left Bakersfield and drove to McFarland, but found no work there; they then went south to the Mexican border, returned to Bakersfield and continued to San Francisco, afterwards to Sacramento and Placerville. They next drove to Salt Lake City and then decided to go to Montana to look for work in the wheat fields; not finding employment there, they decided to go to Canada. To be sure of getting far enough on the credit cards, the defendant had an extra gas tank installed at Great Falls, Montana; it was not an efficient job of installation; gasoline was spilled as they progressed, causing the escape of gasoline fumes. At the Canadian border they were turned back because of their youth and lack of funds. This happened late at night, possibly after midnight. The boys decided to go to the Dakotas to look for work, and they headed east on U. S. Highway No. 2, a two-lane highway running easterly and westerly across the northern part of Montana. About 20 miles west of Havre, Montana, the car overturned, and plaintiff was thrown out; he sustained injuries to his spine which have permanently paralyzed him from the waist down, causing a degenerative condition from which he will never recover and which will shorten his lifespan approximately 25 per cent.

    Admittedly, the defendant had driven from Great Falls to the Canadian border and on part of the return trip; he remained at the wheel most of the day and night and up until about 2:30 to 4 a.m. of the next day. During most of the night hours plaintiff had been in the back seat asleep. About midnight the boys stopped for a sandwich and coffee at a roadside restaurant. The defendant testified he did not drive after they left the café and that when they were leaving the café he

was in the back seat of the car preparing to go to sleep; later he changed his story to say that he drove away from the café but after a short time climbed into the back of the car and went to sleep. The accident occurred at some time between 5 and 6 a.m. on August 8, 1959. When the Montana Highway Patrol investigated, the defendant told the officer that he was driving, that he was asleep at the wheel, went off the road and turned over. The defendant was arrested and charged with reckless driving; he pleaded guilty and was fined $50, and not having the money, was committed to jail. He served four days, when his parents paid the fine, and he was released.

At the trial defendant testified that either Philpott or Frye was driving; that he had concocted the story that he was driving, because he thought that his insurance coverage would not be effective if he admitted that an unlicensed minor was operating the car; that Frye had told him that Philpott was operating the car when the accident occurred; that Philpott did not remember who was the operator.

Ed Frye, the third person in the car, was not called as a witness. Upon Frye's return to Bakersfield he had given conflicting statements about who was driving the automobile at the time of the accident.

Plaintiff testified that when the three were returning from Tijuana, Mexico, he was given a ticket by a California highway patrolman for driving the defendant's car without a license and that he did not drive at any time thereafter. When the Montana highway patrolman arrived at the scene, plaintiff was lying on his stomach in the barrow pit; he was crying and in pain and told the highway patrolman his name and that the defendant Mitchell had been driving the car.

Plaintiff was taken to hospitals at Havre and at Great Falls, Montana, and from there he was flown to Bakersfield; he remained in the Memorial Hospital for about a month and was then removed to the Orthopedic Hospital in Los Angeles, where he stayed from September 1959 to March 1960; plaintiff has been under doctors' care since that time.

In support of the motion for a new trial, the plaintiff filed the affidavit of one Allen Basden, who stated that he was 19 years old and lived in Bakersfield; that he had known defendant for several years and in 1959 lived on the same street; that he learned of the accident through Frye; that about a month after Basden was informed of the accident by Eddie Frye he was in his front yard, saw the defendant and discussed the accident with him; that the defendant informed

Basden that he was driving the car and ran off the road and turned over; that on November 19, 1962, Basden was served with a subpoena by a process server representing the defendant which required him to appear as a witness at the trial on November 20, 1962; that the process server asked him what he knew about the accident, and Basden stated that Frye and defendant had told him that the defendant was driving the car; that the process server then informed Basden that it was not necessary for him to appear in court to testify and that he would assume full responsibility for Basden's not appearing; that several days later Basden became concerned and went to the home of the plaintiff to ask about the case; that when he was informed that the verdict had been in favor of defendant, as defendant had testified at the trial that he was not driving the car, Basden for the first time informed the plaintiff of his conversation with the defendant in which the latter had admitted driving the car.

Plaintiff's attorney also filed an affidavit to the effect that he did not become aware of the evidence available to the plaintiff through Basden until shortly after the verdict was rendered and that there was no way that the plaintiff or his attorney could have known previously that Basden was a material witness.

Two counter-declarations were filed in opposition to the plaintiff's motion for new trial, one by defendant's attorney and one by defendant. Defendant's attorney stated in his declaration that Allen Basden was subpoenaed as a witness because it was planned that he would testify as to possible adverse testimony by Frye, but that when Frye was not called, it was not necessary to use Basden as a witness. Plaintiff points out that Allen Basden was subpoenaed on November 19, 1962, and asked at that time what he knew about the case, whereupon he was immediately informed that he need not come to the trial; plaintiff asks: How could defendant or his attorney then know that Eddie Frye would not be called as a witness?

In his declaration, the defendant acknowledged a conversation with Basden occurring approximately two or three days after his return from Montana before the time he decided to tell the truth, and that from the date of the accident until he became honest in his statement, he told not only Basden but many other people that he was the driver of the automobile at the time of the accident.

■ *People* v. *Norman*, 177 Cal.App.2d 59, 67 [1 Cal.Rptr.

699], sets out the requirements for granting a new trial on the ground of newly discovered evidence: "(1) the evidence and not merely its materiality must be newly discovered; (2) the evidence must not be merely cumulative; (3) a different result must be probable on a retrial of the cause; (4) the party could not with reasonable diligence have discovered and produced it at the trial; (5) these facts must be shown by the best evidence which the case admits."

The trial court's ruling was within discretionary limits because the alleged newly discovered evidence was merely cumulative in nature, and such evidence does not entitle a party to a new trial as a matter of right. (*Gaven* v. *Dopman*, 5 Cal. 342; *Dayton* v. *Landon*, 192 Cal.App.2d 739 [13 Cal.Rptr. 703].) The jury had before it at least four instances when the defendant made statements that he was driving the car at the time of the accident: (1) such admission was made to the Montana Highway Patrol Officer at the scene of the accident; (2) the defendant appeared before the traffic judge in Montana and entered a plea of guilty to the charge of reckless driving; (3) plaintiff's father testified that the defendant told him that he had gone to sleep and turned over; (4) the same fact was testified to by plaintiff's mother. Furthermore, the defendant admitted on the witness stand at the trial itself that he had told numerous people that he was driving the car, and that he had told the plaintiff and Eddie Frye in the hospital immediately after the accident to make the same misstatement, because he thought that he would prejudice his insurance coverage if he admitted that one who did not have a license was driving. Whatever the truth may be as to the fact, it is certain that the evidence that could have been given by the affiant Basden would have been merely cumulative.

2. *There Was No Reversible Error in the Instructions.*

Section 32-1113 of the Revised Codes of Montana reads as follows: "The owner or operator of a motor vehicle shall not be liable for any damages or injuries to any passenger or persons riding in said motor vehicle as a guest or by invitation and not for hire, nor for any damages to such passenger's or person's parent or guardian, unless damage or injury is caused directly and proximately by the grossly negligent and reckless operation by him of such motor vehicle."

In Montana the guest law thus requires proof of grossly negligent and reckless operation of a motor vehicle in order to

warrant recovery. The instruction which it is claimed constituted reversible error is as follows: "You are instructed that ordinary negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done. *Gross negligence is something more than ordinary negligence; by gross negligence is meant an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a heedless disregard of the consequences without the exercise of any effort to avoid them.* In order to recover, plaintiff must prove by a preponderance of the evidence something more than mere speed, or an error in judgment, or momentary inattentions, or loss of presence of mind." (Italics added.)

The authorities cited in connection with the instruction proposed by the defendant are: *Nangle* v. *Northern Pacific Ry. Co.,* 96 Mont. 512 [32 P.2d 11, 13]; *Cowden* v. *Crippen,* 101 Mont. 187 [53 P.2d 98]; *Baatz* v. *Noble,* 105 Mont. 59 [69 P.2d 579]; *Anderson* v. *Olson,* 106 Vt. 70 [169 A. 781].

It should be observed that the charging portion of the first cause of action in plaintiff's complaint contains language at least as strong as the questioned portion of the instruction when it is alleged that defendant ". . . wilfully and intentionally operated said vehicle in violation of traffic laws located thereat, at a wanton and reckless rate of speed . . . with wanton disregard of the possible consequences to plaintiff of said conduct; . . ."

The appellant urges that the Montana law with respect to the necessity of proof by a guest "seems to be pretty well embodied in the three cases cited at the bottom of the foregoing instruction," referring to the Montana cases cited above. In the *Nangle* case, *supra,* 96 Mont. 512 [32 P.2d 11, 13], the Supreme Court of Montana says that a host is not liable to his guest for injuries,

". . . unless the damage or injury was caused directly and proximately by the grossly negligent and reckless operation of the automobile by Power [the owner and operator of the car]. It therefore becomes necessary for us to give consideration to the scope and effect of the above-quoted act of the Legislature.

"Prior to this enactment the law in this jurisdiction made it incumbent upon the driver of an automobile to use reason-

able care for his guest's safety. (*McNair* v. *Berger*, 92 Mont. 441 [15 P.2d 834].) It is obvious from an examination of the entire act that a guest, his parent or guardian, may not recover from the driver of an automobile for any injury the proximate cause of which was the ordinary negligence of such driver. Counsel for appellant argue that in order for plaintiff to recover it must be established, at least prima facie, that the driver of the automobile in question was guilty of willful and wanton misconduct. In support of this contention they cite numerous cases under the Michigan statute, which provides that no recovery may be had under similar facts unless the accident 'shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle.' (Comp. Laws Mich. 1929, § 4648.) The Michigan court, however, has said that in their jurisdiction there is no such thing as 'gross negligence, in the sense of great or much negligence.' (*Union Trust Co.* v. *Railway Co.*, 239 Mich. 97 [214 N.W. 166, 167, 66 A.L.R. 1515].) And again the same court has said with reference to the quoted statute: 'The term ''gross negligence,'' as employed in this statute, does not mean something of less degree than willful and wanton misconduct.' (*Oxenger* v. *Ward*, 256 Mich. 499 [240 N.W. 55]; *Bobich* v. *Rogers*, 258 Mich. 343 [241 N.W. 854].)

"As was pointed out by this court in *Liston* v. *Reynolds*, 69 Mont. 480 [223 P. 507], we have numerous statutes of long standing recognizing degrees of negligence. To those there cited might well be added section 8658, Rev. Codes 1921. Furthermore, this court has recognized a distinction between willful injury and negligence. (*Neary* v. *Northern Pacific Ry. Co.*, 41 Mont. 480 [110 P. 226].) Hence the Michigan court decisions interpreting their statute are of no persuasive force, since the courts of that state refuse to recognize certain distinctions which for many years have been observed by both the legislative and judicial departments of our state government, and from which we are not free or inclined to depart.

"Likewise in support of this contention many decisions by the Supreme Court of Iowa under a statute limiting the recovery by the guest to injuries resulting from 'reckless operation' of an automobile are called to our attention. (Iowa Code 1927, § 5026.b1.) It is noteworthy that the Iowa court does not recognize any such thing as degrees of negligence; and even though negligence is great, it says it is still negligence. (*Hannah* v. *Central States Elec. Co.*, 210 Iowa 864

[232 N.W. 421] ; *Phillips* v. *Briggs,* 215 Iowa 461 [245 N.W. 720].)

"The plain intention of the Legislature in enacting chapter 195, *supra,* was to relieve the owners and operators of automobiles from liability for injuries to guests proximately caused by ordinary negligence, but not otherwise change the liability of owner or operator of an automobile to his guest. This conclusion is fortified when reference is made to the title of this act. The pertinent portion thereof declares: 'An Act Releasing Owners and Operators of Motor Vehicles from Responsibility for Damages or Injuries to Gratuitous Passengers; Providing such Passenger Assumes the Ordinary Negligence of such Owner or Operator; and Providing the Ordinary Negligence of such Owner or Operator is Imputed to such Passenger; Excepting Owners or Operators of Motor Vehicles Whose Gross Negligence or Reckless Operation was the Proximate Cause. . . .' (Laws 1931, c. 195.) The title of an act is indicative of the legislative intent in passing it. (*State* ex rel. *Smith* v. *Duncan,* 55 Mont. 376 [177 P. 248].)

" 'Gross negligence' and 'reckless operation' are variously defined by different courts. Most, if not all, of them are of little assistance in the classification of various states of facts within or without such definitions. Under the construction of this statute herein announced, whether 'gross negligence' and 'reckless operation' are synonymous or said to be different in meaning one from the other is immaterial, for if the conduct of the driver of the automobile was in fact something more than ordinary negligence, it matters not, under the act in question, by what name it is called, or by what adjective it may be described; the defendant is nevertheless liable. Ordinary negligence is the absence of ordinary and reasonable care. Ordinary and reasonable care is that degree of care which prudent persons in the circumstances of each case would be likely to exercise. [Citation.]"

The *Cowden* case, *supra* (101 Mont. 187 [53 P.2d 98]), and the *Baatz* case, *supra* (105 Mont. 59 [69 P.2d 579]), lean heavily on the *Nangle* case, *supra* (96 Mont. 512), as correctly stating the law of Montana. In the three cases there is an absence of desirable precision in the definition of the phrase contained in the applicable code section, ". . . grossly negligent and reckless operation. . . ." However, an earlier Montana case, *Liston* v. *Reynolds,* 69 Mont. 480 [223 P. 507, 511], contains the language almost letter perfect that is objected to in the instruction given by the court. It was decided

before the Montana guest statute was adopted; it holds that Montana recognizes degrees of negligence and then quotes with approval from *Good Roads Construction Co.* v. *Port Huron, St. C. & M.C. Ry. Co.*, 173 Mich. 1 [138 N.W. 320, 324], as follows:

" 'By gross negligence is meant intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exercise of any effort to avoid them.' "

The substance of this definition, with the change of the word "thoughtless" to "heedless" forms the italicized part of the defendant's instruction No. 2, of which plaintiff now complains.

In *Williamson* v. *McKenna*, 223 Ore. 366 [354 P.2d 56, 63-64], the Supreme Court of Oregon aptly comments: "Since the enactment of its guest statute (R.C.M. 1947, § 32-1113) the Montana Court has not deemed it necessary to further define gross negligence, other than to state that it is the failure to exercise slight care and that it is something more than ordinary negligence."

Gross negligence in California has been held to involve the intention to do an act or make an omission which may result in harm. (*Hawaiian Pineapple Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 656, 662 [255 P.2d 431].) " '. . . that want of care which would raise a presumption of the conscious indifference to consequences.' " (*People* v. *Costa*, 40 Cal.2d 160, 166 [252 P.2d 1].)

See also definitions of gross negligence in terms of *intentional actions*: *Sumner* v. *Edmunds*, 130 Cal.App. 770, 776 [21 P.2d 159]; *Helme* v. *Great Western Milling Co.*, 43 Cal.App. 416, 420 [185 P. 510]; *Kastel* v. *Stieber*, 215 Cal. 37, 46 [8 P.2d 474].

In discussing the guest statutes, Prosser has said (Prosser, Torts (2d ed. 1955), p. 452): "These statutes, which have been held constitutional, vary greatly in their language, and provide in general that there shall be no liability to an automobile guest who rides without giving compensation unless the conduct of the driver is intentional, or 'wilful,' 'wanton,' 'reckless,' 'in disregard of the safety of others,' 'grossly negligent,' or similar phraseology. In applying the statutes, the courts have experienced considerable difficulty in determining the meaning of these terms, and the whole matter is surrounded by considerable confusion. It is at least clear

that something more is required than mere inadvertence, con-fusion or lack of attention, that there must be a more or less extreme departure from ordinary standards of care, and probably, under most statutes, that the conduct must differ in quality, as well as in degree, from ordinary negligence, and must involve a conscious disregard of a known serious danger.''

While there is no sharp and comprehensive definition of ''gross negligence'' in recent opinions in Montana, and the Supreme Court there seems to sidestep the necessity of such a positive definition (*Watkins* v. *Williamson*, 132 Mont. 46 [314 P.2d 872]; *Carter* v. *Miller*, 140 Mont. 426 [372 P.2d 421]), it is reasonable to assume that the *Liston* case, *supra*, (223 P. 507), is still good law.

In any event, the instructions on the subject in their totality were entirely fair. The court read the applicable code section (§ 32-1113, *supra*) and gave the following additional instructions on this subject, after positively charging the jury that they were to consider all of the instructions as a whole and to regard each in the light of all the others: ''You are hereby instructed that since the accident in this case occurred in the State of Montana that the substantive law of that State must apply.

''

''You are hereby instructed that at the time and place of the accident here in question, the following Montana Code Section was in full force and effect:

'' '32-1114. (1748.2) ASSUMPTION OF RISK BY GUEST IN MOTOR VEHICLE, WHEN. Any person riding in a motor vehicle as a guest or by invitation and not for hire, assumes as between owner and guest the ordinary negligence of the owner or operator of such motor vehicle.' ''

''You are hereby instructed that at the time and place of the accident here in question, the following Montana Code Section was in full force and effect:

'' '32-1115. (1748.3) IMPUTATION OF ORDINARY NEGLIGENCE TO GUEST. The ordinary negligence of the owner or operator of a motor vehicle as between owner and guest is imputed to any person riding in such vehicle as a guest or by invitation and not for hire.' ''

''You are hereby instructed that 'gross negligence' and 'reckless operation' are variously defined by different courts. Most, if not all, of them are of little assistance in the classification of various states of facts within or without such

definition. Under the construction of this statute herein announced; whether 'gross negligence' and 'reckless operation' are synonymous or said to be different in meaning one from the other is immaterial, for if the conduct of the driver of the automobile was in fact something more than ordinary negligence, it matters not, under the act in question, by what means it may be described; the defendant is nevertheless liable.''

''Ordinary negligence is the doing of that which an ordinarily prudent person would not have done, or the omission to do that which an ordinarily prudent person would have done.

''In this case, the defendant, Sanford R. Mitchell, Jr., is charged with grossly negligent and reckless operation of the car. Any negligence in excess of ordinary negligence is sufficient on the part of the said Defendant, Sanford R. Mitchell, Jr., to sustain a verdict in favor of the plaintiff.''

''You are instructed that in an ordinary negligence case involving the operation of a motor vehicle on a public highway, the plaintiff is obliged to prove only that he was injured by the failure of the operator of the motor vehicle involved to use ordinary care. In this case, however, the plaintiff assumes the ordinary negligence of the owner and operator of the motor vehicle. The plaintiff in this case cannot recover against the owner or operator unless he has first proved by a preponderance of the evidence that the operator was guilty of something more than a failure to use ordinary care which proximately caused his injury, if any.''

''You are instructed that it is not sufficient for the plaintiff to prove that the operator of the motor vehicle involved was guilty of ordinary negligence; and unless the plaintiff in this case proves by a preponderance of the evidence that Sanford Mitchell, Jr., operated the vehicle in a grossly negligent and reckless manner, and that such gross negligence and recklessness was the proximate cause of the accident, your verdict must be for the defendant.''

A different but equally conclusive answer to the contention made by the appellant inheres in the rule applicable to the function of an appellate court. Every intendment is in favor of the judgment of the lower court, and this means, among other things, that this court, on appeal, may assume that the jury by its general verdict found for respondent on every issue submitted. One of the contentions made throughout the trial of the case and which was the subject of instructions to the jury was that the defendant, Sanford R.

Mitchell, Jr., was not driving the automobile at the time of the accident but that it was being operated by the plaintiff himself. This was the subject of evidence in the case, from which the jury could draw the conclusion and make the implied finding that the plaintiff himself was the driver of the car at the time of the accident and that, therefore, Mitchell could not be held responsible for the unhappy result. For the purpose of the appeal we must assume that the jury so found, and therefore any error in the instructions with respect to the duty of a driver could not constitute pertinent or reversible error.

The appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.