[Civ. No. 49594. Second Dist., Div. Five. Oct. 12, 1978.]

ZURICH-AMERICAN INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant, Cross-complainant and Appellant.

482

COUNSEL

Anderson, McHale & Connor, Michael J. McHale and Arthur E. Schwimmer for Defendant, Cross-complainant and Appellant.

Haight, Dickson, Brown, Bonesteel & Rigg, Kim H. Collins and Roy G. Weatherup for Plaintiff, Cross-defendant and Respondent.

OPINION

**STEPHENS, J.**—This is an appeal from a declaratory judgment determining the obligations, under Insurance Code section 11580.9,[1] of two insurance companies whose policies cover the same motor vehicle involved in a traffic accident, out of which a liability loss arose.

---

[1] Unless otherwise specifically noted, all section references are to the Insurance Code.

The following facts were established by stipulation, or are otherwise undisputed, or findings not contested:[2] On August 1, 1974, Robert Roesies, dba Robbie's Truck Painting.(Roesies), was driving a 1973 Ford truck with the permission of the truck owner, Peck Road Ford Truck Sales (Peck), when he struck a bicycle ridden by Salvador Robles, a minor. Peck, who is in the business of selling motor vehicles, had orally hired Roesies to repair and paint the front fender of the truck. After the completion of the repairs, Peck requested Roesies to drive the truck to a muffler shop, at which place Peck was to take possession. Under customary procedure, Roesies would have delivered the truck to the Peck place of business. Roesies was en route to the muffler shop when the accident occurred.

Robles, by and through his guardian ad litem, filed a complaint for personal injuries, charging that Roesies, personally and as Robbie's Truck Painting, and Peck "did negligently, carelessly, and unlawfully entrust, drive, manage, maintain and operate" the truck. The matter proceeded to trial; Robles was eventually awarded $100,000 in damages and $488.95 in costs.

On the date of the accident, Roesies was a named insured in an automobile and garage liability insurance policy issued by Zurich-American Insurance Company (Zurich). The policy contained limits of $300,000 for bodily injury per occurrence. The 1973 Ford truck was a vehicle described in a liability policy issued by Liberty Mutual Insurance Company (Liberty Mutual) to named insured owner Peck. The limits for bodily injury applicable to the accident under the Liberty Mutual policy was $200,000.

Following trial on the personal injury complaint, Zurich brought the present action against Liberty Mutual for a declaration, under section 11580.9, that the Liberty Mutual policy provided primary coverage for

[2]"On August 1, 1974, ROBERT ROESIES was operating a certain 1973 Ford truck, without trailer attached, bearing California license No. 91384 N, on or near East Garvey Boulevard in the City of El Monte, *with the permission of the owner of said truck*, PECK ROAD FORD TRUCK SALES, INC., when an accident occurred between said truck and a bicycle being operated by one SALVADOR ROBLES, a minor." (Stipulation of facts, No. 4. Italics added.)

"On August 1, 1974, Robert Roesies was operating a certain 1973 Ford truck, without trailer attached, bearing California license No. 91384 N, on or near East Garvey Boulevard in the City of El Monte, *with the permission of the owner of said truck,* Peck Road Ford Truck Sales, Inc., when an accident occurred between said truck and a bicycle being operated by one Salvador Robles, a minor." (Findings of fact, No. 4. Italics added.)

the accident. Liberty Mutual answered, generally denying the allegation of the complaint and filed a cross-complaint seeking a declaration that Zurich was primarily liable.

After a nonjury trial, the court found that a situation of coinsurance existed; the policies issued by Zurich and Liberty Mutual independently afford valid and collectible liability insurance coverage for the losses arising out of the accident. The court rejected Liberty Mutual's contention that the controversy was governed by section 11580.9, subdivision (a). The court declared section 11580.9, subdivision (d), to be controlling. Under subdivision (d), Liberty Mutual, since it insured the 1973 Ford truck as a described owned vehicle, was conclusively presumed to provide primary coverage. The Zurich policy was held to be excess. In accordance with the result reached in the declaratory relief action, Liberty Mutual satisified the judgment entered in the Robles' personal injury action. Liberty Mutual appeals.

Prior to 1970, the allocation of loss between coinsurers, two or more insurers affording coverage to the same loss, was made by judicial resort to the provisions of the respective policies. Often the policies contained provisions (so-called "other insurance" clauses) through which one coinsurer would attempt to avoid or minimize the amount of its liability at the expense of the other coinsurers. "The court's first task in analyzing an other insurance provision was to determine whether, with regard to a particular loss, another insurance clause purported to render the insurance afforded by the policy excess, prorata, or ineffective." (Cal. Automobile Insurance Law Guide (Cont.Ed.Bar 1973) p. 151; for a discussion of these terms see *id.,* pp. 148-149.) Judicial construction of these provisions was marked by inconsistency, prompting commentators and the courts alike to request legislative clarification. (*American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543, 544 [19 Cal.Rptr. 558].)

In 1970, the Legislature responded to these requests with the enactment of section 11580.9. Section 11580.9 contains a series of alternative conclusive presumptions to be employed by the courts in determining the priority of coverage between coinsurers. Section 11580.9 embodies the public policy declared by the Legislature in companion section 11580.8, which is "to avoid so far as possible conflicts and litigation, with resulting court congestion . . . ."

Section 11580.9, subdivision (d), sets forth as a general rule: "[W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess." Subdivision (d) is controlling except where subdivisions (a) through (c) apply. Subdivision (a) provides:

"(a) Where two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, and one of such policies affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing motor vehicles, then both of the following shall be conclusively presumed:

"(1) If, at the time of loss, the motor vehicle is being operated by any person engaged in any of such businesses, or by his employee or agent, the insurance afforded by the policy issued to the person engaged in such business shall be primary, and the insurance afforded by any other policy shall be excess.

"(2) If, at the time of loss, the motor vehicle is being operated by any person other than as described in paragraph (1), the insurance afforded by the policy issued to any person engaged in any of such businesses shall be excess over all other insurance available to such operator as a named insured or otherwise."

At trial, Liberty Mutual asserted that the exception contained in subdivision (a) was applicable and by its operation took precedence over subdivision (d), rendering the Zurich policy primary and its policy excess. The court rejected this contention, expressing the view that subdivision (a) does not apply where, as is the situation in the instant case, more than one of the policies affording coverage has "a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing motor vehicles . . . ." (§ 11580.9, subd. (a).) The court also stated that subdivision (a) "is designed for that situation where one of the policies of a multi-policy coverage, where one and only one of those policies affords coverage to an individual engaged in the business of selling, repairing, servicing, etc., that is, the typical case where

I would take my car in to be repaired and the user of that car gets involved in an accident, that sets up a priority. . . . [¶] The legislature says under those circumstances, we choose to put the primary liability on that person who is engaged in the business of selling, repairing, etc. [¶] Accordingly, this court finds that sub[division] a is not applicable because there is no need to assess a priority between one policy covering an assured in the business of repairing or selling, etc., and one not so engaged. [¶] Accordingly, this court finds that the applicable provision is 11580.9 sub[division] d. Two or more policies affording valid insurance; they apply to the same motor vehicle. It is not a situation where a, b or c apply, obviously, by my reasoning."

The court apparently felt that subdivision (a) establishes priorities only between a policy issued to a person engaged in the enumerated automotive business and any other policy. Zurich, in its brief, states: "The above reasoning . . . is reinforced by the fact that there would otherwise be no way of determining which of the several insurance policies is primary."

We conclude that the trial court's construction of subdivision (a) was incorrect. ■ Since the matter was submitted on undisputed and stipulated facts, we are not bound by the trial court's construction.[3] The construction of section 11580.9, under such circumstances, is a question of law. (*Pacific Export Packers* v. *Chubb/Pacific Indem. Group* (1976) 57 Cal.App.3d 186, 190 [129 Cal.Rptr. 86].)

■ Under the clear language of subdivisions (a)(1) and (a)(2), the priority between coinsurers is made on the basis of who was operating the motor vehicle at the time of the accident occasioning the insurable loss. As used in the subdivision, the term operator must include within its meaning the driver of the vehicle. Thus, in a situation where a vehicle involved in an accident was driven by one with the permission of the owner, primary liability attaches to the policy under which the permissive user is afforded coverage as a named insured, and the insurance afforded by any other policy, including that of the owner, is excess.

The requirement, under subdivision (a), that at least one policy must have as its named insured a party engaged in the enumerated automotive businesses, represents a legislative concern over the problem of coinsur-

---

[3]Had the parties stipulated as to an agency relationship as distinguished from permissive user only, or had the trial judge, from the testimony before him and from the stipulation of facts found an agency, i.e., he found permissive user, our problem would be quite different.

ance in those businesses. These automotive businesses often present a factual question as to whether the vehicle driven by the tortfeasor was with the permission of the owner. Typically, a private individual, who seeks to have his car repaired or serviced, will give his mechanic or the mechanic's agent permission to drive the car in order to accomplish the work. If an accident occurs while the vehicle is being driven within the scope of the permitted use, an issue of coinsurance arises: whether the policy covering the mechanic as a named insured under his policy or as an additional insured under the owner's policy should be primary. Subdivision (a) was enacted specifically to resolve this question. The mechanic's policy, since he was the operator of the vehicle at the time of the accident, would, under subdivision (a), be presumed to afford primary coverage. The result in the instant case should not be different merely because the owner of the vehicle, instead of being a private individual, turns out to be engaged in one of the automotive businesses outlined in the subdivision. To hold differently would have the effect of transferring the primary liability for the accident from the insurer of the negligent party to the insurer of an innocent party. It is sound public policy to place the primary liability upon the party who is the most responsible for the loss and who was in the best position to have avoided it, thus encouraging the negligent party to exercise due care. (*International Business Machines Corp.* v. *Truck Ins. Exch.* (1970) 2 Cal.3d 1026, 1032 [89 Cal.Rptr. 615, 474 P.2d 431].)

In summary, under subdivision (a), the initial question is, of the two or more policies affording valid and collectible liability insurance, whether at least one affords coverage to a named insured engaged in the businesses listed within the subdivision. If that question is answered in the affirmative, then the second question is who was the operator of the vehicle at the time of the loss. Primary liability is placed on that party's insurance policy.

In the instant case, the two policies afforded valid and collectible liability insurance. At least one of the policies was issued to a named insured in the specified automotive business and he was proceeding in the course and scope of such business and not as an agent for the owner.[4]

---

[4]Zurich, relying on the "general verdict rule" argues that we must assume that the jury concluded that a principal-agency relationship existed between Peck and Roesies. In *Philpott* v. *Mitchell* (1963) 219 Cal.App.2d 244 [32 Cal.Rptr. 911], the court states, at page 255, the rule: "Every intendment is in favor of the judgment of the lower court, and this

Roesies was the operator of the truck at the time of the accident; he was delivering the truck from his place of business to the owner. Under subdivision (a), the liability policy issued to Roesies by Zurich is primary, and the Peck policy issued by Liberty Mutual is excess.

As a final point, Zurich claims the right to contribution from Liberty Mutual of one-half of the loss. This claim asserts that at the trial on the personal injury claim, Peck, under a negligent entrustment theory, was found to be independently negligent. This independent negligence, Zurich argues, would bar a claim to equitable indemnity and therefore sets up their claim for contribution under Code of Civil Procedure section 875.

There was an allegation in the personal injury complaint that charged each defendant with negligent entrustment. However, there is nothing in the record brought before us which indicates that this theory was presented at trial or that evidence was introduced in its support. Zurich, based on such a record, cannot now claim that the jury found Peck independently negligent. There is no suggestion in the record other than that Peck was found liable on the basis of its permissive use of the vehicle given to Roesies (as set forth in the stipulation of facts and in finding 4 by the trial judge). Peck, only passively negligent, would have been entitled to equitable indemnity.

Moreover, even if we accept Zurich's contention that Peck was independently negligent, its claim to contribution must be denied. "Questions of contribution between coinsurers are decided by reference to the terms of their respective contracts, not the right to indemnification that may exist among the persons insured by the policies." (*Universal Underwriters Inc. Co.* v. *Aetna Ins. Co.* (1967) 249 Cal.App.2d 144, 153 [57 Cal.Rptr. 240]; but see *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 634 [119 Cal.Rptr. 449, 532 P.2d 97] [indicating that the rule in *Universal* can be altered by a prospective express indemnity agreement]; to this effect see section 11580.9, subd. (f), [permitting modifica-

means, among other things, that this court, on appeal, may assume that the jury by its general verdict found for respondent *on every issue submitted.*" (Italics added.)

Zurich's contention that there was an issue of agency submitted to the jury fails of support in the record. In fact, the record of the accident-liability case was not before the trial judge in the instant case, nor before us.

We have received argument from both sides about issues presented and not presented in the accident-trial. Copies of jury instructions given and withdrawn have been submitted to us. We do not rely upon any matter not shown to have been before the trial judge in the single action from which this appeal is taken.

tion of the conclusive presumptions by written agreement].) There was no indemnity agreement between Roesies and Peck. Therefore, the right to contribution must be decided by reference to the insurance contracts which must, as a matter of law, include among their terms, section 11580.9, subdivision (a). By operation of subdivision (a), the Liberty policy is excess coverage. Zurich must bear primary responsibility and, under the applicable limits of its policy, the entire loss here.

The judgment is reversed.

Hastings, J., concurred.

**KAUS, P. J.,** Dissenting.—I respectfully disagree. If this case involved an important moral issue, I might join the majority in an interpretation of section 11580.9 of the Insurance Code which involves, as I shall demonstrate, some rather massive rewriting. Since, however, the case involves nothing more than a straightforward application of a code section which attempted to make statutory order out of decisional chaos, I protest against an interpretation which unnecessarily ignores the clear language of section 11580.9—a section which the Legislature apparently wanted to keep unsoiled from excessive judicial gloss, declaring in section 11580.8 that it "expresses the total public policy of this state respecting the order in which two or more . . . policies . . . shall apply, . . ."

The basic policy which section 11580.9 expresses is the one stated in subdivision (d) and applied by the trial court—that the policy which describes the vehicle as an owned vehicle is the one that bears the loss. Since this provision usually becomes relevant when some other applicable policy was issued to the driver who was actually at fault, I deduce from the statute that the Legislature was not primarily interested in dumping the loss on the insurer who had issued a policy to the negligent driver.

To be sure, subdivisions (a), (b) and (c) provide exceptions from the basic rule of subdivision (d). They should be given effect where they apply. This, however, is not such a case.

Subdivision (a) by its express terms applies where several policies cover the same motor vehicle with respect to a "liability loss" and one—and only one—of these policies is issued to an insured who is in the

automobile business. Then (1) if that insured or one of his employees was operating the vehicle at the time of the loss, that insured's policy is primary; or (2) if someone other than that insured was operating the vehicle at the time of the loss, that insured's policy is excess.

This is all very simple if one posits, as the Legislature did, just one insured who is in the automobile business. The moment one admits the possibility that subdivision (a) applies although more than one insured is in the automobile business, it becomes apparent that substantial rewriting of subdivision (a) and particularly of its paragraph (1) of section 11580.9 becomes necessary. To begin with, the introductory language to subdivision (a) must be rewritten as if the italicized words "or more" were part of the statute: "Where two or more policies . . . apply to the same motor vehicle . . . and one *or more* of such policies affords coverage to a named insured engaged in the business of selling, . . ." At this point, I merely note the obvious problems attendant upon judicial attempts to smuggle the words "or more" into the very sentence of a statute in which the Legislature has demonstrated its ability to use the words "or more" when it wants to.

Inserting "or more" into the first sentence of subdivision (a) is, however, just the beginning of the majority's problems. To reach the result which it evidently deems just, it must also make changes—additions if you will—to paragraph (1) of subdivision (a). The previous change—"or more"—established that we could be dealing with a situation involving more than one insured in the automobile business. The court must then turn to the situation where one of these insured's drives a vehicle with the permission of another insured who is also in the business. To this end, it rewrites paragraph (1) of subdivision (a)—again I italicize the addition: "If . . . the motor vehicle is being operated by any person engaged in any of such businesses . . . the insurance afforded by the policy issued to the person engaged in such business *who operated the vehicle* shall be primary, . . ." Otherwise, of course, since both are in the automobile business, it would not be clear that it is the driver's and not the owner's policy that is to be primary.

The rewriting job becomes even more complex if the driver is not, as here, a named insured who is in the automobile business, but one of his employees. Paragraph (1) must therefore be rewritten as follows: "If . . . the motor vehicle is being operated by any person engaged in any of such businesses, or by his employee or agent, the insurance afforded by the

policy issued to the person engaged in such business *who operated the vehicle or whose employee or agent operated the vehicle* shall be primary, . . ."

The majority concedes that all this is only true if there is no master-servant or principal-agent relationship between the driver and the insured who is the owner of the vehicle. (See majority opn., fn. 3.) I gather that if Roesie had been found to have driven the vehicle as the employee of Peck, the majority would let the judgment stand. This, then, requires a further rewriting job of paragraph (1) of subdivision (a). Presumably, in order to take this concession into account, the paragraph should really read as follows: "If . . . the motor vehicle is being operated by any person engaged in any of such businesses, or by his employee or agent, the insurance afforded by the policy issued to the person engaged in such business *who operated the vehicle or whose employee or agent operated the vehicle* shall be primary, . . . *unless the operator operated the vehicle as agent or servant of the owner of the vehicle. . . .*"

In brief, I would leave the job of rewriting the section to the Legislature. Therefore, I dissent.

The petition for a rehearing was denied November 7, 1978, and the opinion was modified to read as printed above. Kaus, P. J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied December 20, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.