[Civ. No. 56162. Second Dist., Div. Five. June 1, 1981.]

JUDY LYNN McCALL et al., Cross-complainants and Appellants, v. GREAT AMERICAN INSURANCE COMPANY et al., Cross-defendants and Appellants.

994

COUNSEL

Haight, Dickson, Brown & Bonesteel, Kim H. Collins and Roy G. Weatherup for Cross-complainants and Appellants.

Harold Q. Longenecker and Joel Dwork for Cross-defendants and Appellants.

OPINION

STEPHENS, J.—Appellants, Aetna Casualty and Surety Company (hereinafter referred to as Aetna), together with their insured, Judy and John McCall, appeal from a finding that Aetna's insurance was primary. The instant dispute centers around which policy of insurance applies to cover a loss from an automobile accident in which Judy McCall was involved.

The parties stipulated to the following facts: At the time of the accident Judy McCall was driving a loan car owned by Ajax Rent-A-Car, which was covered as an "owned automobile" under her husband, John's, insurance with appellant Aetna.[1] The loan car was given to McCall, while the automobile actually covered by Aetna, a car leased from Gibraltar on a three-year lease, was being repaired. This vehicle

---

[1] The Aetna policy provided "owned automobile" coverage for the loan car as a "temporary substitute automobile" if "... temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing or repair ...." The parties stipulated that Judy McCall was using the loan car with Gibraltar Leasing Company's permission.

was leased by John McCall's business and used by John McCall as an employee of the company.

The leasing company, Gibraltar Leasing Company (hereinafter referred to as Gibraltar), was in the business of leasing automobiles for periods of six months and longer. Gibraltar had insurance through Great American Insurance Company (hereinafter referred to as Great American) which covered the leased vehicle. The parties stipulated that both Aetna and Great American provided coverage for the loan vehicle at the time of the accident.[2]

The matter was submitted on the stipulation of facts. The trial court found that primary coverage was provided by Aetna and that Great American provided excess. Aetna and appellants McCall appeal this finding. Additionally, Great American, Gibraltar and Ajax Rent-A-Car appeal the denial of attorneys' fees.

As both parties concede that cross-defendants are not entitled to recover attorneys' fees in this appeal [as distinct from the resolution of other cross complaints in the case], we address the sole issue of which policy of insurance provides primary coverage under Insurance Code section 11580.9.[3]

---

[2]Aetna provided coverage as previously mentioned as a "temporary substitute vehicle" and Great American afforded fleet coverage for the loan car.

[3]All subdivision references, unless otherwise noted, are to Insurance Code section 11580.9.

Relevant to this case are subdivisions (b) and (d). Subdivision (b) provides in pertinent part: "(b) Where two or more policies are applicable to the same loss, and one of such policies affords coverage to a named insured engaged in the business of renting or leasing commercial vehicles without operators, as the term 'commercial vehicles' is used in Section 260 of the Vehicle Code, or *the leasing of any other motor vehicle for six months or longer*, it shall be conclusively presumed that the insurance afforded by such policy to a person other than the named insured or his agent or employee shall not be primary, but shall be excess over any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an additional insured under a policy . . .; and, in such event, the two or more policies shall not be construed as providing concurrent coverage, and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall be primary and the other policy or policies shall be excess." (Italics added.)

Subdivision (d) applies in pertinent part: "(d) Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

■    At the outset, we note as we did in *Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co.* (1978) 85 Cal.App.3d 481, 487 [149 Cal.Rptr. 472], that this court can make an independent determination of which policy of insurance provides primary insurance to cover this accident. "The cause was submitted to the trial court on stipulated facts, documentary evidence and argument of counsel. Where no extrinsic evidence was introduced at trial to aid in the construction of the policy such construction is a question of law; thus, on review of the judgment we are free to make an independent determination. (*Pacific Export Packers* v. *Chubb/Pacific Indem. Group* (1976) 57 Cal.App.3d 186, 190 ....)" The facts were stipulated to by both parties in the case at bar; the judge rendered his decision based on this and documentary evidence and oral argument. We, therefore, can determine on appeal which policy applies.

■    The key issue is which subdivision of Insurance Code section 11580.9 applies to the facts in this case. Appellants contend that subdivision (d) controls as the general rule because no other subdivision applies. Critical to which subdivision applies is the resolution of whether the nature of the insured's business or the status of the particular automobile involved in the accident herein controls which subdivision applies.

Asserting that the status of the particular vehicle controls, appellants maintain that Gibraltar was in the business of long-term vehicle leasing, but was not so acting with regard to the loan car given to Judy McCall. Hence, as the loan car was used for less than six months, subdivision (b) cannot apply. Because no other subdivision applies,[4] the general rule of subdivision (d) applies and Great American's policy should be primary.

Appellant's contention that the critical factor is the use that the particular vehicle is put to is in error and appellants reveal their error by citing as support for this assertion the statement from *Government Employees Ins. Co.* v. *Carrier Ins. Co.* (1975) 45 Cal.App.3d 223, 228 [119 Cal.Rptr. 116], that whether a vehicle is commercial is determined by the use made of it.

---

[4]Subdivision (a) does not apply because neither insurance policy affords coverage to a named insured engaged in the businesses listed. (See *Zurich-American Ins. Co., supra*, 85 Cal.App.3d at p. 488.) Subdivision (c) does not apply because the facts do not involve the loading or unloading of a vehicle.

Appellants apply this too broadly when they assert that use of a vehicle determines the applicability of the subdivisions. *Government Employees Ins. Co., supra,* applies only to a determination under subdivision (b) of whether a vehicle can be classified as a "commercial vehicle." *Government Employees Ins. Co.* and subdivision (b) do not go so far as to say that the use determines which subdivision applies. The other two cases appellants rely on also lend no support to their position.[5]

By the clear language of subdivisions (a) and (b) indicating that coverage depends on the nature of the business in which the insured engages, we hold that the nature of the insured's business, not the status of the particular vehicle, determines which insurance policy is primary in a multipolicy situation under Insurance Code section 11580.9.

Turning to the facts in the case at bar, the lease under which McCall received the loan automobile while the leased automobile was repaired, was for three years. The loan vehicle was supplied by the terms of the loan agreement to "customers of Gibraltar Leasing Co., Inc., only" with the loan agreement providing for the signature of the lessee. It is manifest that the loan automobile was a part of Gibraltar's long-term leasing business. The result in this case would thus not be different even if the status of the vehicle controlled our interpretation of Insurance Code section 11580.9, which it does not.

Subdivision (b) applies, because it provides that if one of the two policies affording coverage covers an insured in the business of leasing motor vehicles for six months or longer, such insurance is excess with primary coverage being presumed under the policy covering the named or additional insured. Great American is thus not primary in the case at

---

[5]*Zurich-American Ins. Co. v. Liberty Mut. Ins. Co., supra,* 85 Cal.App.3d 481, 488, holds that subdivision (a) applies where at least one of the insurance policies affords coverage for an insured engaged in one of the enumerated businesses. This is unaffected where one of the policies affording the excess coverage is not to a private individual, but to one engaged in one of the enumerated businesses of the subdivision. The emphasis is not on the status of the particular vehicle, but rather the nature of the insured's business to determine if the subdivision applies.

*Westerholm v. 20th Century Ins. Co.* (1976) 58 Cal.App.3d 628, 634 [130 Cal.Rptr. 164], similarly held that the initial determination under Insurance Code section 11580.9 needs to be whether a named insured of one of the policies engages in one of the specified businesses. The court rejected the assertion that the driver needs to be engaged in one of subdivision (a's) outlined businesses and that the automobile must be used exclusively in one of these businesses.

bar; Aetna as the McCall's insurer is. Great American as the insurer of Gibraltar is excess, if any is required.

The trial court correctly interpreted Insurance Code section 11580.9.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

The petition of cross-complainants and appellants for a hearing by the Supreme Court was denied August 19, 1981. Kaus, J., did not participate therein.