17 P.3d 106

**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Plaintiff/Appellee,**

v.

**UNIVERSAL UNDERWRITERS, INC., a Kansas corporation, Defendant/Appellant.**

No. 2 CA–CV 99–0139.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 26, 2000.

Review Denied April 24, 2001.

---

Teilborg, Sanders & Parks, P.C. by Steven Plitt and Brian E. Cieniawski, Phoenix, Attorneys for Defendant/Appellant.

Chandler, Tullar, Udall & Redhair by Peter Akmajian and Dev K. Sethi, Tucson, Attorneys for Plaintiff/Appellee.

## OPINION

ESPINOSA, Chief Judge.

¶1 Appellee Allstate Insurance Co. brought this declaratory judgment action seeking a determination that it was the excess insurer and that defendant/appellant Universal Underwriters, Inc., was the primary insurer for damages resulting from an accident involving a vehicle Universal insured. Universal appeals the trial court's orders granting Allstate's motions for summary judgment and for attorney's fees it incurred below. For the reasons set forth below, we affirm the court's summary judgment order but vacate its order granting Allstate's motion for attorney's fees.

### Facts and Procedural History

¶ 2 The undisputed facts in this case are as follows. In January 1997, Domingo Orduno was involved in a two-car accident while driving a truck owned by his employer Phelps Ross, Inc. (Phelps), an automobile dealer, which had a "garagekeeper's" automobile liability policy issued by Universal. Orduno had borrowed the vehicle solely for his personal use and was not engaged in any work-related activities for Phelps at the time of the accident.[1] The occupants of the other vehicle submitted claims for the injuries they sustained to both Universal and Allstate, Orduno's personal automobile liability insurer. Allstate subsequently brought this action against Universal seeking a determination of whether its policy or Universal's should provide primary coverage for the accident. The parties filed cross-motions for summary judgment, each arguing that the other was the primary insurer for the accident under former A.R.S. § 28–1170.01(A). The trial court concluded that Universal's policy was primary under subsection A and therefore granted summary judgment for Allstate. This appeal followed.

### Standard of Review

■■■ ¶ 3 On appeal from a trial court's order granting summary judgment, we review de novo whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Prince v. City of Apache Junction,* 185 Ariz. 43, 912 P.2d 47 (App.1996). We also review de novo legal questions of statutory construction. *Prudential v. Estate of Rojo–Pacheco,* 192 Ariz. 139, 962 P.2d 213 (App.1997).

### Statutory Liability

¶ 4 Section 28–1170.01 governs the allocation of coverage when two or more insurers issue motor vehicle liability policies that cover the same loss. See *John Deere Ins. Co. v. West American Ins. Group,* 175 Ariz. 215, 854 P.2d 1201 (App.1993). The general rule is prescribed in § 28–1170.01(B), which provides as follows:

Except as provided in subsection A of this section, if two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.

Thus, under subsection B, when an individual is driving another person's vehicle, it is conclusively presumed that the policy insuring the vehicle, rather than the policy insuring the driver, is primary. The trial court determined, however, that, because Orduno was driving a vehicle owed by an entity engaged in the business of selling automobiles, subsection A, not subsection B, controls here.

¶ 5 Subsection A provides as follows:

If two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which liability loss shall arise, and one of such policies affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing motor vehicles, both of the following shall be conclusively presumed:

1.  If, at the time of loss, the motor vehicle is being operated by any person engaged in any of such businesses, or by his employee or agent, the insurance afforded by the policy issued to the person engaged in such business shall be primary, and the insurance afforded by any other policy shall be excess.

2.  If, at the time of loss, the motor vehicle is being operated by any person other than as described in paragraph 1, the insurance afforded by the policy issued to any person engaged in any of such businesses shall be excess over all other insurance available to

---

1. Orduno borrowed the truck pursuant to a standardized "Borrowed Vehicle Agreement" provided by Phelps.

such operator as a named insured or otherwise.

Accordingly, subsection A, the so-called garagekeeper's provision, presumes that a "named insured['s]" coverage shall be primary, in contrast to the presumption in subsection B that the policy insuring the vehicle shall be primary.

¶ 6 Universal asserts that, although the trial court correctly concluded that subsection A controls here, it erred in determining the insurers' respective obligation by applying subsection A(1) rather than A(2). Universal focuses on subsection A's numerous references to a "named insured" or "person" who is "engaged in" an automobile business, arguing that the legislature intended each of those phrases to connote a person who is both employed in the automotive field and working during the course and in the scope of that employment at the time of loss. Accordingly, Universal maintains, because Orduno was not acting within the course and scope of his employment at the time of the accident, subsection A(2), not A(1), applies here.

¶ 7 The trial court concluded, however, that the legislature did not intend to limit the application of subsection A(1) to those situations in which a vehicle's operator was "performing some function for the business at the time of the incident giving rise to the loss," surmising that, had the legislature intended that result, it easily could have included such limiting language, which it did not do. Concluding therefore that subsection A(1) does not require that garagekeeper personnel be professionally engaged "at the moment of the event giving rise to the loss," and noting that Orduno had been driving Phelps's truck with Phelps's permission at the time of the accident, the court concluded that Universal "should be primarily responsible for [Orduno's] use of [the truck] during the period of time it was available to him" under subsection A(1). We agree.

¶ 8 The goal of statutory construction is to determine and give effect to the intent of the legislature. *Centric–Jones Co. v. Town of Marana*, 188 Ariz. 464, 468, 937 P.2d 654, 658 (App.1996). Therefore, we look first "at the words of the statute itself, and if their meaning is clear, we accord the statute that plain meaning." *Id.* Only if "an ambiguity exists such that the legislative intent cannot be ascertained from the statute, [may] we resort to [other] rules of statutory construction." *Id.*

¶ 9 Although, as Universal argues, the first reference in subsection A(1) to "any person engaged in any of such businesses" could be viewed as referring to a person who is presently engaged in a business-related task, the other three substantively identical references to such persons in subsection A logically cannot be so viewed. Rather, each of those references simply describes or categorizes the types of "such businesses" in which the "named insured" persons must be engaged, namely garagekeeping, thus distinguishing them from other ordinary businesses that are covered under subsection B. Moreover, in its first use in the introductory paragraph of subsection A, the phrase refers to an insurance policy that "affords coverage to a named insured engaged in" an automotive business. We doubt the legislature intended that such policies be applicable only where the garagekeeper himself is engaged in a work-related activity when a loss occurred. We presume the legislature intended that phrase to be construed consistently throughout the statute and therefore agree with the trial court that the legislature's numerous references in subsection A to persons engaged in an automotive business were intended simply to connote the occupation of the referenced person, that is, garagekeeper. See *Mendelsohn v. Superior Court*, 76 Ariz. 163, 261 P.2d 983 (1953) (words and phrases in statute are to be accorded their obvious and natural meaning); *State v. Cid*, 181 Ariz. 496, 499, 892 P.2d 216, 219 (App.1995) (to avoid contradictory construction of clauses, sentences, or words, statutes that are in pari materia must be "read together and harmonized").

¶ 10 We believe our construction of § 28–1170.01(A) is consistent with at least one of the legislature's purposes in enacting the garagekeeper's provision: to make garagekeepers' policies primary when garagekeepers or their agents damage their customers' vehicles. Although its legislative history is

sparse, our courts have construed the statute to be the result of "legislative concern over the special problem of coinsurance in the enumerated automotive businesses," in which garagekeepers, such as mechanics or other automotive specialists, regularly assume control of their customers' vehicles. *John Deere*, 175 Ariz. at 217, 854 P.2d at 1203; see also *Zurich–American Ins. Co. v. Liberty Mut. Ins. Co.*, 85 Cal.App.3d 481, 149 Cal. Rptr. 472 (1978) (substantively identical coinsurance statute similarly construed). Absent the garagekeeper's provision, were the garagekeeper or one of his agents to negligently damage a customer's vehicle, the customer would be primarily liable under subsection B, providing garagekeepers and their agents less incentive to use due care with their customers' vehicles than with their own. See John Deere; Zurich–American. A customer, likewise, would have less incentive to use due care when operating, for example, a "loaner" vehicle provided by the garagekeeper while the customer's vehicle was being serviced.

¶ 11 It would contravene legislative intent to find a garagekeeper's policy primary under subsection A(1) when a garagekeeper or one of his agents damages a customer's vehicle while attempting to repair or improve it, but excess under A(2) when a garagekeeper or agent is driving a customer's vehicle on a lark or frolic. Moreover, although, under Universal's argument, a garagekeeper's employee's personal insurance policy would be primary under subsection A(2) were the employee to negligently damage a customer's vehicle while driving it on a frolic, a different result is mandated were the employee to lack his or her own personal liability insurance. Because subsection A(2) presumes the operator is personally insured, if an uninsured garagekeeper's employee negligently damaged a customer's vehicle while driving it for a non-work-related purpose, neither that provision nor A(1) would apply. Consequently, we would necessarily look to subsection B to determine coverage, under which the customer's policy would be primary.[2] We doubt the legislature intended that a customer's policy be out of reach, and, thus, that others' policies would provide both primary and excess coverage, under subsection A(2) when a personally insured garagekeeper or agent negligently damages the customer's vehicle while not "engaged in" business, but that the customer's policy be primary under subsection B if the garagekeeper or agent fortuitously lacks personal liability insurance.

¶ 12 Our construction also harmonizes subsection A with subsection B, under which policies covering ordinary businesses provide primary coverage for all accidents that occur while their agents are operating company vehicles,[3] regardless of whether the agents were engaged in a work-related activity at the time.

¶ 13 In sum, because we find nothing in the language or discernable legislative intent of subsection A(1) suggesting that, for that provision to apply, a garagekeeper's agent must be working during the course and in the scope of his or her employment at the time of loss, we agree with the trial court that Phelps's policy was primary under § 12–1170.01(A)(1). Accordingly, the trial court properly granted summary judgment in favor of Allstate.

### Attorney's Fees

¶ 14 Universal next contends the trial court erred in granting Allstate's motion for attorney's fees and "related non-taxable expenses," made pursuant to A.R.S. § 12–341.01(A), which provides for an award of attorney's fees to the successful party in an action "arising out of a contract." Universal argues that not only was Allstate's motion for attorney's fees untimely, but, because the present action was not one arising out of a contract, attorney's fees were unavailable under § 12–341.01.[4] Although we agree with

---

2. This assumes, of course, that the garagekeeper's policy provides coverage in this circumstance, thus ensuring that at least two policies, the garagekeeper's and customer's, are applicable.

3. This again assumes that, as here, at least two policies expressly provide coverage for the accident.

4. Universal filed a supplemental brief contesting the court's order awarding Allstate attorney's fees, which was entered after Universal had filed its opening brief. Because Allstate has not filed

both propositions, we reverse the court's award of attorney's fees based on our determination that the court no longer had jurisdiction when it awarded those fees.

¶ 15 Because Universal had already filed its notice of appeal from the summary judgment before Allstate even requested its attorney's fees below, the court was thus divested of jurisdiction to enter judgment awarding such fees. See *Trebilcox v. Brown & Bain, P.A.*, 133 Ariz. 588, 653 P.2d 45 (App.1982) (when appeal to higher court has been perfected, trial court loses all jurisdiction except that in furtherance of appeal; thus, trial court may not award attorney's fees pursuant to § 12–341.01(A) when notice of appeal has been filed from judgment on underlying contract claim on which award based), overruled on other grounds, *Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987).

■ ¶ 16 Even if the trial court had not been divested of jurisdiction to consider Allstate's motion for attorney's fees, such motions must "be filed and served no later than 60 days after entry of judgment unless otherwise directed by the court" under former Rule 54(g), Ariz.R.Civ.P., 16 A.R.S.[5] The court's order granting Allstate's motion for summary judgment was filed on May 13, 1999. Allstate, however, did not file its motion for attorney's fees until July 16, more than sixty days after the entry of judgment. Nor does the record reflect that the trial court granted Allstate leave to file the motion after the sixty-day filing period. Allstate's request for attorney's fees was therefore also untimely.

■ ¶ 17 Finally, because Allstate "prevailed on a pure statutory claim" and neither party has challenged the other's underlying insurance contract, this is not an action arising out of a contract. *O'Keefe v. Grenke*, 170 Ariz. 460, 472, 825 P.2d 985, 997 (App.1992); see also *Kennedy v. Linda Brock Automotive Plaza, Inc.*, 175 Ariz. 323, 856 P.2d 1201 (App.1993) (section 12–341.01(A) inapplicable if contract is merely factual predicate to, but not essential basis of, action). Accordingly,

a timely responsive brief on this issue, we address it without the benefit of Allstate's input.

we also conclude the trial court erred in basing its award of attorney's fees on § 12–341.01(A).

### Disposition

¶ 18 The trial court's order granting Allstate's motions for summary judgment is affirmed, but its order granting Allstate's request for attorney's fees is vacated. Having concluded attorney's fees are unavailable in this action under § 12–341.01(A), we deny Allstate's request for attorney's fees on appeal made pursuant to that statute.

CONCURRING: JOSEPH W. HOWARD, Presiding Judge, and WILLIAM E. DRUKE, Judge.

**5.** Effective until December 1, 1999.